# U.S. DISTRICT COURT
# FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rola HAMANDI | * |
| 1816 S.W. 4th Avenue | |
| Pompano Beach, Fla. 33060, | * |
|         Petitioner | |
| | * |
|     v. | |
| | * |
| Michael CHERTOFF, Secretary | |
| U.S. Department of Homeland Security | * |
| 425 Murray Drive; Building 410 | |
| Washington, D.C. 20528, | * |
|         Respondent | |
| | * |
| Emilio T. GONZALEZ, Ph.D., Director | |
| U.S. Citizenship & Immigration Services | * |
| 20 Massachusetts Avenue N.W. | |
| Washington, D.C. 20529, | * |
|         Respondent | |
| | * |
| Robert S. MUELLER III, Director | |
| Federal Bureau of Investigation | * |
| 935 Pennsylvania Avenue N.W. | |
| Washington, D.C. 20525, | * |
|         Respondent | |

## OPPOSITION TO MOTION TO DISMISS

COMES NOW THE PETITIONER, Rola Hamandi, by and through counsel, J. Michael Springmann, and respectfully moves this Honorable Court to deny the government's Motion to Dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1). This Opposition is based on the accompanying Memorandum of Points & Authorities as well as the following breaches of ethics by the government:

■    1. Claims that E-mails have been sent to the Undersigned Petitioner's counsel that a 30-day extension was needed to "confer" with the Respondents about the delay in Mrs. Hamandi's citizenship application when, in fact, no such E-mail was received.

■    2. Failure to provide the Undersigned with a copy of the Motion to Dismiss, filed March 12, 2008.

■    3. The non-existent E-mail, the 30-day extension of time to reply, and the filing of the Motion to Dismiss without a copy to Petitioner's counsel were intended to deliberately delay the proceedings as well as harass Petitioner Rola Hamandi with a concomitant effort to run up her litigation costs.

■    4. One of the motives for the foregoing is most likely blatant discrimination against Petitioner Hamandi because of race, religion, and national origin.

March 28, 2008                    Respectfully submitted,

                                  Rola Hamandi

                                  By counsel,


                                  J. Michael Springmann
                                  Law Office of J. Michael Springmann PLLC
                                  4619 Yuma Street N.W.
                                  Washington, D.C. 20016
                                  Tel. (202) 686-4869
                                  Fax (202) 966-1254
                                  E-Mail: springmannslaw@fcc.net
                                  U.S. District Court Bar No. 465099

2

# U.S. DISTRICT COURT
# FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rola HAMANDI | * |
| 1816 S.W. 4th Avenue | |
| Pompano Beach, Fla. 33060, | * |
|           Petitioner | |
| | * |
|        v. | |
| | * |
| Michael CHERTOFF, Secretary | |
| U.S. Department of Homeland Security | * |
| 425 Murray Drive; Building 410 | |
| Washington, D.C. 20528, | * |
|          Respondent | |
| | * |
| Emilio T. GONZALEZ, Ph.D., Director | |
| U.S. Citizenship & Immigration Services | * |
| 20 Massachusetts Avenue N.W. | |
| Washington, D.C. 20529, | * |
|          Respondent | |
| | * |
| Robert S. MUELLER III, Director | |
| Federal Bureau of Investigation | * |
| 935 Pennsylvania Avenue N.W. | |
| Washington, D.C. 20525, | * |
|          Respondent | |

## OPPOSITION TO MOTION TO DISMISS

COMES NOW THE PETITIONER, Rola Hamandi, a citizen and national of the French

Republic and the Lebanese Republic, by and through counsel and respectfully requests this

Honorable Court to deny the U.S. Justice Department's Motion to Dismiss her Petition for a Writ

of Mandamus. As reasons for such, she states:

## SUBJECT MATTER JURISDICTION

1. This Honorable Court has indeed subject matter jurisdiction under the Laws of the

United States, to wit, the Administrative Procedure Act, 5 U.S.C. § 704, and the Mandamus

Statute, 28 U.S.C.1361.  "The FBI has a 'mandatory, non-discretionary duty' to complete the

background checks that subjects the FBI's role in the naturalization process to judicial review."

Zagrebelny et al. v. Frazier et al., 2008 WL 624072 (D.Minn. 2008) at 1.

      2.  Moreover, in a discrimination action, Thompson v. U.S. Dept. Of Labor, 813 F.2d 48

(3rd Cir. 1987), the court held that "The APA 'give[s] courts authority to review ongoing agency

proceedings to ensure that they resolve the questions in issue within a reasonable time." Id. at 52,

quoting Public citizen Health Research group v. Comm'r, Food and Drug Administration, 740

F.2d 21, 32 (D.C. Cir. 1984). *See also* Heckman v. Olive, 1992 WL 390249, 8 (E.D.N.Y. Dec. 9,

1992).  In Aslam v; Mukasey, 2008 WL 220708 (E.D. Va. Jan. 25, 2008), "Judge Brinkema

concluded that she should rule for the plaintiff because under APA principles, USCIS had

unreasonably delayed action on the plaintiff's petition for change in status, and that USCIS bore

responsibility for the FBI name check program":

> CIS maintains that completion of the FBI name check is indispensable to a full
> and fair adjudication of the application.  However, CIS has discretion to select its
> investigatory methods and it retains the ability to control their pace.  *See* Cannon
> Decl. ¶ 18 (noting that "USCIS [may] direct [] that a name check be handled on an
> 'expedited basis'").  Because of the unreasonable delay in the processing of
> Aslam's name check and the government's inability or unwillingness to offer
> specific reasons for the delay, the Court finds that CIS must expedite review of
> this application. Aslam, 2008 WL 220708 at 9, cited in Mocanu v. Mueller et al.,
> 2:07-cv-00445-MMB, 02/28/2008) p. 28.

Judge Brinkema then concluded that, under the APA, specifically 5 U.S.C. § 706(1): "A

reviewing court has the authority to "compel agency action unlawfully withheld or unreasonably

delayed." Aslam, 2008 WL 220708 at 4, cited in Mocanu, p. 28.

      3.  The Administrative Procedure Act (APA) requires that "[w]ith due regard for the

convenience and necessity of the parties or their representatives and within a reasonable time,

each agency shall proceed to conclude a matter presented to it." 5 U.S.C.§ 555(b). Furthermore,

"[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5

U.S.C. § 702. "Agency action made reviewable by stature and final agency action for which

there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

When judicial review is proper, "[t]he reviewing court shall compel agency action unlawfully

withheld or unreasonable delayed." 5 U.S.C. § 706. Zagrebelny at 6.

    4. In that case (as in the instant one), the action sought to be compelled is not

discretionary, and USCIS regulations make it clear that Respondents have a duty to adjudicate

applications for naturalization. As stated in Zagrebelny, 8 C.F.R. § 316.14(b)(1) states that

"[s]ubject to supervisory review, the employee of the Service who conducts the

examination...*shall* determine whether to grant or deny the application, and shall provide reasons

for the determination as required under section 333(d) of he Act." (Emphasis added.) *See also*

Kaplan v. Chertoff, 481 F.Supp.2d 370, 399 (E.D. Pa. 2007) (holding that the use of mandatory

rather than permissive language in § 316.14(b)(1) supports the conclusion that USCIS has a

mandatory, non-discretionary obligation to adjudicate applications.); Costa v. Chertoff, 2007 WL

4456218 at 3 (E.D. Pa. Dec. 11, 2007) (USCIS has a non-discretionary duty to adjudicate

applications); Assadzadeh v. Mueller, 2007 WL 3252771 at 2 (E.D. Pa. Oct. 31, 2007

("Processing of [naturalization] applications is a mandatory duty."

    5. As Zagrebelny makes clear, the government's reasoning in the instant case that there

can be no judicial review of delayed "background checks" because there is no statute or

3

regulation dictating a time frame for doing these checks flies in the face of the APA's requirement that the applications must be adjudicated within a reasonable time. 5 U.S.C. § 555(b). It also ignores the fact that Congress, by affording naturalization applicants recourse to the courts under § 1447(b) if a determination is not made within 120 days of the naturalization examination, has provided "the court with a measure of what constitutes a reasonable period for INS to process naturalization applications." Sze v. Immigration and Naturalization Service, et al., 1997 WL 446236 at 7 (N.D. Cal. July 24, 1997). *See also* Alkenani v. Barrows, 356 F.Supp.2d 652, 656 (N.D. Tex. 2005) ("Although immigration officials are vested with broad discretion in making the ultimate decision whether to grant or deny an application for naturalization, they have a non-discretionary duty to process the application within a reasonable time."; Assadzadeh, 2007 WL 352771 at 5 ("Because defendants have a non-discretionary duty to adjudicate naturalization applications and complete background checks, they must do so in a reasonable amount of time."); Sharawneh v. Gonzales 2007 WL 2684250 at 4 (E.D. Pa. Sept. 10, 2007) ("...the USCIS has a mandatory, non-discretionary duty to adjudicate applications for naturalization, such as plaintiff's, within a reasonable period of time.") To make it most clear, the fact that neither a statute nor the implementing regulations provide for a time frame within which USCIS must conduct the examinations or the FBI must complete the background checks, does not lead to the conclusion that applicants have no recourse to the courts to determine if the delay in conducting the interview and completing the background checks is unreasonable. The Zagebelny court stated: "...the USCIS has an affirmative, non-discretionary duty to process these [naturalization] applications and compete the background checks..." The court found "that the APA's requirement that the applications be processed in a reasonable manner is subject to

4

judicial review pursuant to 5 U.S.C. §§ 702, 704.

      7. In yet another decision, a federal District Court has found that it has jurisdiction to compel action by USCIS and the FBI in completing timely "name checks". In Al Daraji et al v. USCIS et al, 2008 WL 183643 (E.D. Pa.), the court ruled that it had jurisdiction over a government-caused unreasonable delay claim pursuant to the APA and the Mandamus Statute, finding that it did have the power to review the reasonableness of agency processing time. It noted that the APA states that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); see also 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); see also Cao, 496 F. Supp. 2d at 576 ("for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive."). The court stated that it had previously ruled that both USCIS and the FBI "have mandatory, non-discretionary duties to adjudicate applications for naturalization and complete background checks...within a reasonable period of time, and the fact that neither Congress nor the agency has specified a [particular] time frame for doing so makes no difference. See Al Daraji, 2007 WL 2994608, at 4-5 (citing Kaplan v. Chertoff, 481 F. Supp. 2d 370 (E.D. Pa. 2007); see also Al Sharawneh v. Gonzales et al., 2007 U.S. Dist. LEXIS 66546 (E.D. Pa. Sept. 10, 2007)(quoting Elhauoat v. Mueller, 2007 U.S. Dist. LEXIS 58906, at 17 (E.D.Pa. Aug. 9, 2007)(citing Pub. Citizen Health Research Group v. Chao, 314 F.3d 143, 152 (3rd Cir. 2005). "Hence we reject the government's argument that plaintiffs are not entitled to either reasonable timely adjudication of their applications or adjudication at all."

8. The court in <u>Al Daraji</u> went further, thumping the government for its claims that there is no such thing as "unreasonable delay": "While the Court can accept the absence of an explicit pre-examination statutory time frame, we find the government's argument on this point a bit inconsistent in that they ask the Court to find both that there is absolutely no time frame outside of which agency delay is unreasonable, yet also ask the Court to find that there is some time period inside of which agency delay is presumptively reasonable. We find that determination entirely within the scope of the Court's discretion." In its Motion to Dismiss, in the instant case, the U.S. Attorney for the District of Columbia is making the same specious argument.

9. Moreover, in <u>Al Daraji</u>, the FBI and USCIS made their usual, ridiculous arguments for delay, claiming "national security" and an overwhelming backlog of "name checks" to be got through. The judge in that case saw through the nonsense and stated that the court was not obligated to relieve the government agencies of their obligation to comply with their mandatory duties, nor condone their non-compliance. The court clearly stated that executive branch problems should be resolved by the executive or the Congress: "It is not the role of the judicial branch to weigh individual plaintiffs' rights to administrative action 'against the agency's burdens in complying.' *See* <u>Chen</u>, 2007 U.S. Dist. LEXIS 68536 at 36. Even a cursory review of the problems detailed in defendants' affidavits [just as in the instant case] reveals that the delays suffered by current applicants for immigration benefits are the result not only of administrative overburdening in light of current 'national security concerns' but also the culmination of a long history of insufficient funding and failure to computerize information at a rate adequate to meet administrative demands. If the primary cause of the delay to these plaintiff's applications is a systemic problem, as defendants suggest, it requires a systemic solution that the Court is not in a

6

position to fund nor implement. Defendants' arguments regarding administrative burdens would be more properly addressed to the political branches, which are in a position to either allocate additional resources to the Name Check Program, or modify the governing statues and regulations." *See* Chen, 2007 U.S. Dist. LEXIS 68536, at 36 (citing Eldeeb v. Chertoff, 2007 U.S. Dist. LEXIS 55000 at 12 (M.D. Fla. 2007); *see also* Tang, 493 F. Supp. 2d at 158 [FN10]; Yan v. Mueller, 2007 U.S. Dist. LEXIS 37861 at 30 (S.D. Tex. May 24, 2007)." Al Daraji p. 8. Footnote 10 on that page reads in part: "If the agencies involved find themselves short of the resources necessary to fulfill their statutory duty to act within a reasonable time, that is a policy crisis. But it is not plaintiffs who ask the Court to relieve the pressure by excusing them from their statutory duty and letting the cost fall on immigration plaintiffs. I will follow the law and leave it to the political branches to fix the system." Tang, 493 F. Supp. 2d at 158.

  10. As the court in Zagrebelny made pellucidly clear, "The injury that plaintiffs complain of is that they have been required to wait too long already. It would be disingenuous to now conclude that, because they could simply wait longer, the court does not have jurisdiction." Zagrebelny at p. 9 citing Sawad 2007 WL: 2973833 at 4; Sun, 2007 WL 2907993 at 4. *See also* Singh v. Still, 470 F. Supp. 2d 1064, 1071 (N.D. Cal. 2007) ("'Waiting for an agency to act cannot logically be an adequate alternative to an order compelling the agency to act.'")(quoting Fu v. Reno, 2000 WL 1644490 at 4 (N.D. Tex. Nov. 1, 2000); Tang v. Chertoff, 493 F. Supp. 2d 148, 150 (D. Mass. 2007)("The duty to act is no duty at all if the deadline is eternity."); Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004)("[T]he CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo', leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA."); Asrani v. Chertoff, 2007 WL

7

3521366 at 3 (D.Minn. Nov. 14, 2007)(finding that outside of seeking redress from the court,

there is no adequate remedy where there was nothing in the record to allow the court to

determine when plaintiff's name check would be returned or if it would be returned at all);

Haidari v. Frazier, 2006 WL 3544922 at 5 (D. Minn. Dec. 8, 2006) ("Defendants miss the point.

The question is whether the Plaintiffs have adequate, alternative means to address this very issue:

[i.e.] the fact that they are still waiting.")

### GOVERNMENT DUPLICITY

11. USCIS and the FBI have drastically altered regulations, if any, governing criminal

background and "name" checks. In fact, they have been using these regulations, adopted without

any notice and without any comment period (in violation of the APA) to essentially prevent

newly-naturalized citizens, particularly Arabs and Muslims from voting against the Republican

Party.

12. Beginning in November 2002, USCIS dramatically altered the naturalization

procedure by expanding the scope of the FBI name check, both by requiring the FBI to make

electronic and manual searches of additional non-criminal FBI files and databases, and by

requiring completion of FBI name checks as a prerequisite to the final adjudication of every

naturalization application. The expanded FBI name check used by USCIS for naturalization

applications is not part of the FBI criminal background checks that are required by Public Law

105-119, Title I, 111 Stat. 2448-49 (Nov. 26, 1997) and implemented pursuant to 8 C.F.R. §

335.2. When it expanded the FBI name check in November 2002, USCIS did not promulgate a

proposed rule or give notice and an opportunity for public comment on the rule, as it had done in

1998 when implementing the FBI criminal background check requirement. The expanded FBI

name check was a substantive departure from prior USCIS policy because it imposed a new requirement in naturalization procedure not based on statute or regulation and because it has had a substantial adverse effect on applications for naturalization by causing significant delays in adjudication. As such, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, required USCIS to promulgate a proposed rule, provide a notice and comment period, and thereafter promulgate a final rule prior to enacting the November 2002 expanded FBI name check. This has not been done.

13. In fact, the federal District Court for the Eastern District of Pennsylvania has ruled that the FBI name check program is not authorized by statute or regulation. (Mocanu v. Mueller et al., 2:07-cv-00445-MMB, 02/28/2008).In Mocanu, Judge Baylson wrote that name checks are not supported by any statutory language, principles of statutory construction, principles of administrative law, or logic. That is, "There is simply no legislation which mandates or authorizes USCIS to employ an FBI name check as a prerequisite for a lawful permanent resident to become a naturalized citizen. Further, the regulations which USCIS has enacted...do not use the term "name check" at all...There is no basis in the record form which the Court can conclude that the regulatory reference to an FBI "administrative" record is synonymous with an FBI name check. Thus, there is no support that the current USCIS practice of securing an FBI name check as a prerequisite to an LPR [legal permanent resident] becoming a naturalized citizen is authorized by statute or regulation." Mocanu at p. 16.

14. Mocanu demonstrates just how far the American government will go to use its power for partisan advantage and exhibits the depths to which the U.S. Justice Department has fallen. That unfortunate agency has been defending USCIS which got caught consciously, unreasonably,

9

and unlawfully withdrawing scheduled citizenship interviews, in a blatant attempt to keep newly-minted citizens from voting in the Fall 2008 general election, thereby deliberately preventing the possibility of a vote against the Republican Party. The direct cause of <u>Mocanu et al. v. Mukasey et al.</u> was that USCIS scheduled citizenship interviews for Petitioners--and then *"descheduled"* them after petitioners had been fingerprinted. The explanation given was most specious: *"due to unforeseen circumstances."* Petitioners were later told that their interviews were delayed because of the FBI being unable to do their "background checks". No further information was provided; no additional information was requested.

15. Most recently and most notably, the United States Justice Department has begun supporting USCIS in moving against Arabs and Muslims seeking citizenship in Florida. That unfortunate government agency has again consciously, unreasonably, and unlawfully refused to act on citizenship applications after interviews in a willful attempt to block any more of "them" from becoming citizens and, conceivably, voting against the Republican Party in the upcoming general election. <u>Adil Amrani et al. Plaintiffs-Petitioners v. Susan Dugas et al. Defendants</u>. Case No. 6:08-cv-246-ORL-18-KRS. U.S. District Court for the Middle District of Florida. Filed 02/19/2008. In that case, Petitioners' naturalization interviews had been completed between 660 days and 1,468 days prior to filing the Petition for Writ of Mandamus. However, the FBI and USCIS still had not completed their decisions on those applications for citizenship--because their "background check" was still pending. The government agencies involved have not yet managed to explain why it takes 2 to 4 years to do their jobs.

16. Whenever challenged by a Petitioner in a Mandamus case, USCIS and the FBI go on at length (cf. statements by Cannon and Brown in Respondents' Motion to Dismiss in the instant

case) about how thorough they must be and how important it is to "national security" (whatever that is).  As stated in <u>Mocanu</u>, the government appears to be fear-mongering for political objectives, and, as a result, clogging the courts with cases seeking redress for its unconscionable delays in naturalization.  "[T]he Government assertion of public interest in a situation in which it appears that appropriately serious safety and security issues are being perverted by protracted delay for a perceive political gain is nothing short of shameful."  The government insists that "name checks" relate to "national security"yet its assertion in fact mocks "national security" since it creates a system in which, by its reasoning, potentially dangerous individuals are allowed to live and work lawfully in the U.S. for years before they are completely investigated.  <u>Mocanu</u>, Document 39, Filed 02/28/2008, pp. 3,4,11.

## ALLEGED WAIVER OF IMMUNITY

17.  The government also maintains that this Honorable Court lacks jurisdiction to entertain Petitioner Hamandi's suit because sovereign immunity has not been expressly waived and the Mandamus Act does not constitute a waiver of sovereign immunity.  "However,...there is a narrow exception to the sovereign immunity bar under the Mandamus Act, and that is, if the plaintiff is seeking 'a writ of mandamus to force a public official to perform a clearly nondiscretionary, ministerial duty imposed upon him in his official capacity'".  <u>Zagrebelny</u> at 5 citing <u>Dugan v. Rank</u>, 372 U.S. 609, 621-22 (1963); <u>Larson v. Domestic and Foreign Commerce Corp.</u>, 337 U.S. 682 (1949); <u>Washington Legal Foundation v. U.S. Sentencing Comm'n</u>, 89 F.3d 897, 901 (D.C. Cir. 1996); <u>Marquez-Ramos v. Reno</u>, 69 F.3d 477 (10th Cir. 1995).  As the Assistant U.S. Attorney is well aware, Petitioner Hamandi sued Respondents in their official capacities as Director of Homeland Security, Director of the Federal Bureau of Investigation

(FBI), and as Director of U.S. Citizenship and Immigration Services (USCIS).

## DISCRIMINATION

18.  One question for this Honorable Court to resolve is whether the government's

Motion to Dismiss is based upon discrimination against Petitioner as an Arab and a Muslim, in

violation of 42 U.S.C. § 2000 and the 14th and 15th Amendments to the U.S. Constitution.

Besides the astonishing unofficial hostility towards Arabs and Muslims by U.S. government

officials and agencies, there is the official hostility enshrined in U.S. Justice Department legal

actions designed to keep Arabs and Muslims from becoming citizens, particularly in Florida

where Petitioner Hamandi lives.  (Adil Amrani).  Those law-abiding members of the community

must continue to suffer discrimination and the hardships of unreasonably and unlawfully delayed

naturalization, including anxiety over their immigration status, prolonged family separations, and

the inability to participate in the political process by voting.

## NATURALIZATION NOT DISCRETIONARY & SUBJECT TO TIME LIMITS

19.  To repeat, naturalization is not discretionary.  The USCIS must determine whether to

grant or deny the Naturalization application. 8 U.S.C. § 1446(d).  And, if the applicant has

complied with all requirements for Naturalization, USCIS must grant the application. 8 C.F.R. §

335.3.  Petitioner Hamandi has complied with all legal and administrative requirements

established by the Congress of the United States.

20.  There are time limits for processing immigration benefits established by the

Congress.  To wit, 8 U.S.C. § 1571(b) states, "It is the sense of Congress that the processing of

an immigration benefit application should be completed not later than 180 days after the initial

filing of the application[.]" Naturalization applications are among the "immigration benefit

12

applications"included within this provision.  This provision, along with 8 U.S.C. § 1571(a), §

1572, and § 1573, make clear Congress' intent to eliminate persistent backlogs in the processing

of immigration benefit applications.  Moreover, Congress has defined the term "backlog" in the

statute as "the period of time in excess of 180 days that such application has been pending before

the Immigration and Naturalization Service."  8 U.S.C. § 1572(1).  Currently, 609 days have

elapsed since Petitioner filed her Application for Naturalization, i.e. 429 days beyond the

Congressionally-defined "backlog".  8 U.S.C. § 1571(b) provides the statutory guideline and

"rule of reason" for determining whether naturalization applications are being processed in a

timely manner.  Under the most straightforward reading of 8 U.S.C. § 1571(b), all naturalization

applications that are not finally adjudicated within 180 days of the date of submission are

unreasonably delayed.  Petitioner's Application has been unreasonably delayed for 429 days.

21. Petitioner is informed and believes that USCIS and the FBI have entered into written

agreements regarding the conduct of FBI name checks on, inter alia, applicants for naturalization,

and that in these agreements neither USCIS nor the FBI impose any time limits for the

completion of name checks.

22. Petitioner is informed and believes that, from time to time, and under certain

circumstances, USCIS requests the FBI to expedite the name checks of certain individuals,

including certain applicants for naturalization.

23. Petitioner is informed and believes that, beginning in April 2006, in response to a

deluge of lawsuits around the country brought by frustrated post-examination naturalization

applicants pursuant to 8 U.S.C. § 1447(b), USCIS implemented a new policy of refusing to

schedule naturalization examinations for those applicants whose FBI name checks were not

13

completed. USCIS has stated that an express purpose of this policy change was to preclude litigation under 8 U.S.C. § 1447(b) by those who have passed naturalization examinations and are awaiting final adjudication of their naturalization applications. As a result of this change in policy, which appears to be an explicit effort to thwart Congress' intent to provide delayed naturalization applicants with recourse to federal courts, the applications of substantial numbers of applicants has been unreasonably delayed, and naturalization examinations have not been scheduled because of pending FBI name checks.

### "NAME CHECKS" KEY CAUSE OF NATURALIZATION DELAYS

24. Name checks are now a key cause of delays in the processing of applications for naturalization, as well as applications for other immigration benefits such as Permanent Residence. In both 2006 and 2007, the USCIS Ombudsman, the individual required by Congress to provide recommendations on improving USCIS services and operations, declared that name checks "significantly delay adjudication of immigrant benefits for many customers, hinder backlog reduction efforts, and may not achieve their intended security objectives." *Citizenship and Immigration Services Ombudsman Annual Report 2006* (hereinafter "2006 Report") at 23 (June 29, 2006, *available at www.dhs.gov/cisombuddsman*; *Citizenship and Immigration Services Ombudsman Annual Report 2007* (hereinafter "2007 Report), at 37 (June 11, 2007), *available at www.dhs.gov/cisombudsman.*

25. In the most recent report, the Ombudsman declared that "FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits" and that the delays are getting worse, not better. 2007 Report at 37. The report noted that, as of May 2007, over 329,000 USCIS name checks were pending, with 64% of those cases (over 211,000)

14

pending more than 90 days, and 32% (almost 107,000) pending more than one (1) year. *Id.* At 37. The report also found that the problems of long-pending name checks has worsened in the last year. *Id.*

26. The Ombudsman also questioned the value of FBI name checks in accomplishing their stated purpose, which is to detect persons who should be denied immigration benefits because they pose a danger or threat to security. In response to USCIS' claims of effectiveness, the Ombudsman declared that "most, if not all, of the problem cases which would result in an eventual denial of benefits also can be revealed by the other, more efficient, automated criminal and security checks that USCIS initiates." 2007 Report at 41.

27. Moreover, the Ombudsman "agree[d] with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially since, in almost every case, the applicant is in the United States during the name check process, living or working without restriction." 2007 Report at 40. In further acknowledgment of the limited use of name checks, the Ombudsman noted that "[n]ame checks are not conducted by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI." 2007 Report at 38.

28. In addition, "[t]o date, the Ombudsman has been unable to ascertain from USCIS the total number of actual problem cases that the agency discovered exclusively as a result of the name check." 2007 Report at 41. Indeed, neither USCIS nor the FBI has ever shown that naturalization applicants, as a class, pose a special danger or threat to security. Moreover, neither USCIS nor the FBI has ever show that the FBI name check alone has led to the detection of even

15

one naturalization applicant who posed a danger or threat to security.

29. Finally, according to the Ombudsman, the FBI has admitted "that it lacks the resources to perform the [USCIS name check] function in a timely manner." 2007 Report at 39.

30. Despite its blizzard of paper in the instant case, the government appears unable to articulate:

- i. Why an FBI name check is required for naturalization of a permanent resident who has already undergone prior name checks.

- ii. Why a check of the criminal background is insufficient for a permanent resident who has already passed an FBI name check.  Or the reverse.

- iii. The benefit of spending millions of the taxpayers' dollars for repetitive FBI name checks for all naturalization applicants, considering that the act of naturalizing such a person neither increases nor decreases "national security".

- iv. Whether the delays in name checks are dangerous to "national security".

31. Again, to reiterate, USCIS has deliberately delayed granting of citizenship from two (2) to four (4) years to applicants who successfully passed all tests and the requisite interview, thereby indicating that there is a pattern and practice to deliberately withhold naturalization from those who apply, so as to prevent them from voting in the general election in the Fall of 2008. Adil Amrani et al. v. Susan Dugas et. al., Case No. 6:08-cv-246-ORI-18-KRS. Mocanu v. Mueller et al., 2:07-cv-00445-MMB, 02/28/2008).  The government appears to withhold naturalization, with a consequent effect on the upcoming general elections, yielding only on a case-by-case basis when federal courts seek to thump the Justice Department rather than the alien for having the temerity to seek adjudication of his rights. (Plaintiffs' Joint Opposition to

16

Defendants' Emergency Motion for Stay Pending Appeal of This Court's Injunctive Order,

Mocanu, Document 30, Filed 02/20/2008 at 3.)

32. The applicable law is as follows:

## APPLICABLE LAW

### Petitioner is Able to Establish All the Elements of a Successful Mandamus Action

33. A mandamus petitioner must demonstrate that: (i.) he has a clear right to the relief

requested; (ii.) the Respondent has a clear duty to perform the act in question; and (iii.) no other

adequate remedy is available. Iddir v. INS, 301 F.3d 492, 499 (7th Cir. 2002). Petitioner easily

meets all three of these criteria.

### i. *Petitioner Has a Clear Right to the Relief Requested*

34. Respondents have deliberately, willfully, and unreasonably refused to adjudicate

Petitioner's Application for Naturalization for nearly two (2) calendar years, thereby depriving

Petitioner of her rights under 8 C.F.R. §§ 316.2 *et seq*. and her right of being lawfully accorded

the privileges of becoming a United States citizen. These rights include the ability to accept

employment, vote, run for political office, and travel in and out of the United States freely and

without delay. 8 U.S.C. §§ 1445 *et seq*. Petitioner is legally entitled to have her application for

citizenship adjudicated forthwith.

### ii. *Respondents Have a Clear Duty to Perform the Act in Question*

35. This Writ of Mandamus should be granted and the government's Motion to Dismiss

be dismissed because Respondents owe Petitioner Hamandi the duty to act upon her request for

prompt adjudication of her long-pending N-400 Application for Citizenship. See Donovan v.

United States, 580 F.2d 1203, 1208 (3d cir. 1978), holding that Mandamus is an appropriate

17

remedy whenever a party demonstrates a clear right to have an action performed by a government official who refuses to act. Under the Regulations, Respondent Department of Homeland Security (DHS) and USCIS have a clear duty to adjudicate such applications. 8 C.F.R. §§ 310.1, 310.2. As here, where the government has failed to take any action, the Court may order the Respondents to adjudicate an application or petition. See e.g., Iddir v. INS, 301 F.3d 492, 500 (7th Cir. 2002), duty to adjudicate applications under the diversity lottery program.; Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997), duty to adjudicate visa application.

36. Mandamus is also appropriate because the government has failed to act within a reasonable amount of time. See: Kim v. Ashcroft, 340 F. Supp.2d 384 (S.D.N.Y. 2004), noting that section 555(b) of the Administrative Procedure Act (APA) requires the government to act within a reasonable period of time. Petitioner Hamandi has waited for almost two (2) years to have her N-400 Application for Citizenship adjudicated. Moreover, she has tried three (3) times to learn about the delay and, despite her best efforts, has received nothing more than "they are working on the 'name check', which might take 4 more years." Respondents have not requested any additional information or evidence necessary for processing nor have they supplied any reason for the inordinate delay in settling the matter, other than the airy response that it "might take as long as 4 years to process". That Mrs. Hamandi's Application has been pending for more than 20 months , since July 31, 2006, is unreasonable and unacceptable.

37. Because Respondents have a clear duty to adjudicate Petitioner Hamandi's N-400 Application and because DHS/USCIS and the FBI have failed to act within a reasonable period of time, the Court may order the Respondents to promptly adjudicate said N-400 Application.

18

### *iii. No Other Adequate Remedy is Available to Petitioner*

38. The Writ of Mandamus ought to be granted because Petitioner Hamandi has no alternative means of attaining adjudication of her Application and her right to issuance of the Writ is "clear and indisputable". Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980). Other than through the Department of Homeland Security and its Citizenship and Immigration Services division, coupled with a Federal Bureau of Investigation "name check", Petitioner has no other means of having her Application adjudicated. Throughout the last year, Ms. Hamandi has utilized all administrative means, short of filing suit, to procure an answer from Respondents, including personal telephone calls and personal visits to USCIS offices. This has been of no avail. Because no other adequate remedy is available to Petitioner, this Honorable Court may order Respondents to adjudicate and grant Mrs. Hamandi's N-400 Application.

THEREFORE, Petitioner prays that this Honorable Court:

i. Deny the government's Motion to Dismiss;

ii. Compel Respondents and those acting for them to perform their duty to expeditiously adjudicate Petitioner's N-400 Application for Citizenship;

iii. Order Respondents to conduct a public notice and comment period to remedy the lack of regulations governing their combined criminal background and name checks, as required by the APA, 5 U.S.C. § 553;

iii. Grant her reasonable attorney's fees and costs under the Equal Access to Justice Act;

iv. And grant such other and further relief as this Honorable Court, in its wisdom, deems just and appropriate.

March 28, 2008                          Respectfully submitted,


                                        Rola Hamandi



                                        By Counsel,



                                        J. Michael Springmann
                                        Law Office of J. Michael Springmann PLLC
                                        4619 Yuma Street N.W.
                                        Washington, D.C. 20016
                                        Tel. (202) 686-4869
                                        Fax (202) 966-1254
                                        E-Mail: springmannslaw@fcc.net
                                        U.S. District Court Bar No. 465099


                                                                            20

## U.S. DISTRICT COURT
## FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rola HAMANDI | * |
| 1816 S.W. 4th Avenue | |
| Pompano Beach, Fla. 33060, | * |
|            Petitioner | |
| | * |
|     v. | |
| | * |
| Michael CHERTOFF, Secretary | |
| U.S. Department of Homeland Security | * |
| 425 Murray Drive; Building 410 | |
| Washington, D.C. 20528, | * |
|            Respondent | |
| | * |
| Emilio T. GONZALEZ, Ph.D., Director | |
| U.S. Citizenship & Immigration Services | * |
| 20 Massachusetts Avenue N.W. | |
| Washington, D.C. 20529, | * |
|            Respondent | |
| | * |
| Robert S. MUELLER III, Director | |
| Federal Bureau of Investigation | * |
| 935 Pennsylvania Avenue N.W. | |
| Washington, D.C. 20525, | * |
|            Respondent | |

## ORDER

Having read the pleadings in this matter and having considered the ability of the Federal

Bureau of Investigation (FBI) and other agencies to conduct background investigations and

"name checks" expeditiously when required, it is this _____ day of _____, 2008

ORDERED

that the government's Motion to Dismiss be and hereby is denied; and it is further

ORDERED

that Mrs. Hamandi's Petition be, and hereby, is granted; and it is further

ORDERED

that Respondents complete the background investigation and "name check" on Petitioner within 30 calendar days after entry of this Order; and it is further

ORDERED

that Respondents schedule a Citizenship Interview within 45 calendar days of the appropriate Order being entered, provided no derogatory information has been found, so as to avoid even the appearance of retaliation against Mrs. Hamandi; and it is further

ORDERED

that Respondents schedule a Naturalization Ceremony within 60 calendar days of the appropriate Order being entered, provided no derogatory information is found, so as to avoid even the appearance of retaliation against Mrs. Hamandi; and it is further

ORDERED

that Respondents conduct a public notice and comment period within 45 days of the appropriate Order being entered to remedy the lack of regulations governing their use of combined criminal background and name checks, as required by the APA, 5 U.S.C. § 553; and it is further

ORDERED

that Respondents pay all Mrs. Hamandi's reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions in this matter were not substantially justified.

_____
Ellen S. Huvelle
U.S. District Judge

22

## CERTIFICATE OF SERVICE

I hereby certify that, on March 28, 2008, I served electronically, through the Court's Electronic Case filing system, the U.S. Attorney for the District of Columbia, Jeffrey A. Taylor, located at 555 4th Street N.W.; Washington, D.C. 20530 with a true and correct copy of the foregoing Opposition to Dismiss and Order.

_____
J. Michael Springmann

23