**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
)
**ROLA HAMANDI,**                                )
)
          **Plaintiff,**                   )
)
    **v.**                                        ) **Civil Action No. 1:07-CV-2153 (ESH)**
)
)
**MICHAEL CHERTOFF, Director,**              )
**U.S. Department of Homeland Security, et al.,**   )
)
          **Defendants.**                 )
———————————————————————)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

      The Immigration and Naturalization Act ("INA") does not permit an individual who

seeks to be naturalized as a citizen of the United States of America, but has not yet completed

her naturalization examination, to obtain a court order compelling United States Citizenship and

Immigration Services ("USCIS") to complete its adjudication of her naturalization application

and to grant her citizenship status.  Instead, the INA permits naturalization applicants to seek

judicial review only if USCIS fails to complete its adjudication within 120 days after an

"examination" has occurred, and permits federal district courts to rule directly on such

naturalization applications or remand them to USCIS.  8 U.S.C. § 1447(b).  Plaintiff concedes

that she has not been examined.  The Court therefore lacks subject matter jurisdiction to review

her claims.

      Perhaps recognizing that this case clearly does not satisfy the conditions for Section

1447(b) jurisdiction, Plaintiff virtually ignores that statute in her opposition brief.[1]  Instead,

_____

[1] Plaintiff filed the opposition brief after the deadline for opposing Defendants' motion to
dismiss expired, and did not seek an enlargement of that deadline.  Therefore, the opposition is

Plaintiff argues that the Mandamus Act provides the requisite waiver of sovereign immunity which permits her suit to proceed.  However, that statute's general jurisdictional grant cannot override the specific limitations on judicial review which Congress set forth in Section 1447(b). Moreover, even if Section 1447(b) did not bar mandamus jurisdiction, Plaintiff would be unable to invoke the Mandamus Act because she has no clear right to the relief sought in the complaint, and Defendants have no clear duty to provide that relief.  The Administrative Procedure Act is inapplicable for similar reasons.

Plaintiff's opposition brief includes several arguments and claims for relief that go beyond the scope of the complaint and Defendants' motion to dismiss.  Specifically, Plaintiff requests an order compelling Defendants to complete her background check within thirty days, argues that USCIS and/or the Department of Justice are discriminating against her on the basis of her race and religion, challenges USCIS's compliance with the APA's notice-and-comment rulemaking requirements, and disputes the validity of numerous USCIS policies.  An opposition brief is not the proper vehicle for raising new claims, and those claims and theories are not properly before the Court.  Regardless, they lack merit, and do not provide a basis for denying Defendants' motion to dismiss.

---

untimely, and not properly before the Court.  <u>See</u> Fed. R. Civ. P. 6(b)(2).  Further, by filing on a Friday instead of the Wednesday on which the opposition was due, Plaintiff reduced the amount of time that Defendants had to prepare the reply by two business days.  <u>See</u> Fed. R. Civ. P. 6(e); Local Civil Rule 7(d).

## ARGUMENT

**I.    SECTION 1447(B) IS THE SOLE MEANS BY WHICH A NATURALIZATION APPLICANT MAY SEEK JUDICIAL REVIEW OR APPROVAL OF A PENDING NATURALIZATION APPLICATION.**

Section 1447(b) is the exclusive remedy for claims challenging delay in adjudicating a naturalization application, and Plantiff cannot bring a Section 1447(b) suit at this juncture because she has not been examined in connection with her naturalization application. See 8 U.S.C. § 1447(b); MTD at 5-10.[2] Section 1447(b) reflects Congress's judgment that the naturalization process should be entrusted to the executive branch, rather than remaining within the jurisdiction of federal district courts. Plaintiff should not be permitted to circumvent that express limitation upon district court jurisdiction by invoking the Mandamus Act and/or the Administrative Procedure Act. See MTD at 5-10.

The opposition brief gives this argument scant attention, and simply states that the Mandamus Act provides a waiver of immunity. Opp. at 11. However, Section 1447(b) imposes specific conditions which cannot be overcome by a more general waiver of immunity. See United States v. Fausto, 484 U.S. 439, 447-50 (1988); see generally Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228-29 (1957) ("Specific terms prevail over the general in the same or another statute which might otherwise be controlling."). Therefore, Section 1447(b) precludes this Court from exercising mandamus or APA jurisdiction to review Plaintiff's claims.

---

[2] Defendants' Motion to Dismiss, Dkt. Entry 12, is referred to as "MTD" in this brief.

II.    **EVEN IF SECTION 1447(B) DID NOT FORECLOSE APA AND MANDAMUS JURISDICTION, NEITHER STATUTE WOULD CONFER SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS.**

Plaintiff bears "the burden of showing that [her] right to issuance of the writ [of mandamus] is clear and indisputable." Will v. United States, 389 U.S. 90, 96 (1967). If there is ambiguity in the statute or regulations from which the right to relief allegedly arises, there can be no mandamus jurisdiction. See Omar v. Mueller, 501 F. Supp. 2d 636, 639 (D. N.J. 2007); Badier v. Gonzales, 475 F. Supp. 2d 1294, 1299 (N.D. Ga. 2006). Plaintiff cannot satisfy her burden of establishing mandamus jurisdiction because neither the INA nor the regulations implementing that statute give USCIS a mandatory, non-discretionary obligation to complete its adjudication of a naturalization application, and/or conduct an interview on that application, while FBI name checks remain pending. Instead, in accordance with Public Law 105-119, the applicable regulations preclude the grant of a naturalization application before background checks have been completed. See 8 C.F.R. § 335.1; Pub. L. No. 105-119, Title I, 111 Stat. 2448 (mandating that appropriated funds shall not be used to complete adjudication of a naturalization application unless the agency has received confirmation from the FBI that a full criminal background check has been completed). Further, USCIS regulations expressly preclude the scheduling of a naturalization interview before USCIS has received all background check results from the FBI. See 8 C.F.R. § 335.2(b). In light of those clear statutory and regulatory mandates, USCIS has no "clear duty" to complete the adjudication of Plaintiff's naturalization application at this time, or to conduct a naturalization interview, and Plaintiff has no clear right to such relief. See MTD at 14-16.

4

Plaintiff's attempt to invoke the APA's "unreasonable delay" provisions[3] fails for substantially the same reasons.  In <u>Norton v. Southern Utah Wilderness Alliance</u>, an opinion which is neither discussed nor acknowledged in Plaintiff's opposition brief, the Supreme Court clarified that the "the only agency action that can be compelled under the APA is action legally <u>required</u>."  542 U.S. 51, 63 (2004).  Thus, under <u>Norton</u>, Plaintiff cannot establish APA jurisdiction unless she demonstrates that USCIS has a non-discretionary duty to complete the adjudication of her naturalization application when she has not been "examined" and her background check results have not been received.  Plaintiff can identify no such duty.  <u>See</u> MTD at 12-13.  Instead, USCIS is legally required to wait for the FBI to complete the background checks before scheduling the naturalization interview and rendering a final decision on the naturalization application.

The fact that Congress stated a general belief that immigration applications should be completed within 180 days does not change the foregoing analysis.  <u>See</u> Opp. at 12-13.  The language Plaintiff cites expresses only "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b).  That language is precatory, and does not impose a deadline on Defendants.  <u>See</u> <u>Wright v. City of Roanoke Redevelopment and Housing</u>, 479 U.S. 418, 432 (1987) (statute phrased in precatory terms does not create a substantive right); <u>Orkin v. Taylor</u>, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress' provisions are

---

[3] The complaint also cites Section 704 of the APA as a source of jurisdiction.  As Defendants have explained, that provision governs review of final agency actions, and therefore is inapplicable here.  <u>See</u> MTD at 10; 5 U.S.C. § 704.  Plaintiff has not responded to that argument, and therefore has conceded that any claims raised under Section 704 must be dismissed.

precatory provisions, which do not in themselves create enforceable rights, or, for that matter, any enforceable law"). When Congress intended to set specific time limits upon an agency's adjudication of an immigration application, it enacted language doing so. See 8 U.S.C. § 1158(d)(5)(A)(iii) (requiring that asylum applications be adjudicated within 180 days after they are filed absent "exceptional circumstances"); id. § 1447(b) (permitting district court review of naturalization application if USCIS does not complete adjudication within 120 days of examination). Notably, the INA contains no language linking a deadline for adjudicating naturalization applications to the date on which the application was filed.

Furthermore, that "sense of Congress" provision was enacted in 2000, prior to the events of September 11, 2001. See Immigration Services and Infrastructures Improvements Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard against which to measure the delay at issue in this case. The events of September 11, 2001 marked a dramatic shift in matters involving national security, and had a significant impact on the pace and necessary thoroughness of FBI name checks and other investigations. See Cannon Decl. ¶ 21; Razaq v. Poulos, 2007 WL 61884, at *12 (N.D. Cal. Jan. 8, 2007) (explaining that after September 11, 2001 "there was a lot more work for the FBI to do and it had to be done a lot more carefully").

Plaintiff's assertion that INA Section 1447(b) provides a basis to assess the reasonableness of the pace of the adjudication of her application is misguided. See Opp. at 4. The plain language of that statute indicates that the 120-day period which triggers district court jurisdiction over pending naturalization applications begins to run after the applicant has been examined. See 8 U.S.C. § 1447(b). The USCIS regulation implementing Section 1447(b) also

calculates the time period for adjudication by reference to the date of the applicant's examination. See 8 C.F.R. § 335.3(a). Neither provision applies here, because Plaintiff has not been examined.[4]

Finally, Plaintiff has not yet "complied with all legal and administrative requirements" for naturalization, notwithstanding her contrary assertions. Opp. at 12. The regulation Plaintiff cites provides that the service officer in charge of the adjudication "shall grant the application if the applicant has complied with all requirements for naturalization under this chapter," and that the decision should be made at the interview or within 120 days thereafter. 8 C.F.R. § 335.3(a). Plaintiff concedes that her interview and test for language skills and knowledge of U.S. history and culture have not yet taken place. See Compl. ¶ 7. Therefore, she has not been "examined," and by definition has not met the criteria for naturalization. See 8 U.S.C. § 1446(b) (contemplating that naturalization applicants will be examined); 8 C.F.R. § 335.2 (making examination a requirement for naturalization).

## III.   PLAINTIFF'S REQUEST FOR AN ORDER COMPELLING THE FBI TO COMPLETE ITS NAME CHECKS WITHIN 30 DAYS GOES BEYOND THE SCOPE OF THE COMPLAINT AND SEEKS RELIEF THE COURT LACKS JURISDICTION TO GRANT.

Plaintiff's request for an order compelling the FBI to complete its name checks within 30 days, and the supporting arguments in the opposition brief, are not properly before the Court.

---

[4] Defendants do not dispute that naturalization applicants may obtain judicial review when the criteria of Section 1447(b) have been met. However, as explained supra, Section 1447(b) does not confer jurisdiction in this case because Plaintiff has not been "examined." See Part I, supra; Omar, 501 F. Supp. 2d at 641; Baez-Fernandez v. INS, 385 F. Supp. 2d 292, 295 (S.D.N.Y. 2005). That makes this case fundamentally distinct from Zagrebelny v. Frazier, a case on which Plaintiff principally relies, which involved a post-interview delay. See 2008 WL 624072 (D. Minn. Mar. 4, 2008).

Although the mandamus petition names the FBI as a Defendant, the prayer for relief does not ask the Court to order the FBI to complete the name checks, and instead focuses exclusively on the "adjudication" of Plaintiff's naturalization application.[5] See Petition at Prayer for Relief. Plaintiff cannot raise a new claim in an opposition brief, and instead can only seek relief on claims presented in the complaint (which was styled as a petition for mandamus in this case). See Sharp v. Rosa Mexicano D.C., LLC, 496 F. Supp. 2d 93, 97 n. 3 (D.D.C. 2007) (holding plaintiff could not raise new claims in a summary judgment opposition brief); DSMC, Inc. v. Convera Corp., 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (same).

If the request for mandamus relief against the FBI had been properly pled, the Court would lack subject matter jurisdiction to review it. The D.C. Circuit has recognized that "[w]hen it comes to matters touching on national security or foreign affairs . . . the presumption of [judicial] review runs aground." Bruno v. Albright, 197 F.3d 1153, 1162 (D.C. Cir. 1999) (dismissing challenge to denial of visa for lack of jurisdiction); see generally Voinche v. FBI, 940 F. Supp. 323, 328 (D.D.C. 1996) (noting that "courts generally have deferred to agency expertise in national security matters") (citing Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984)). Although the D.C. Circuit made that statement in connection with a visa application, the same principles apply here.

Name checks are a means of determining whether an individual poses a threat to national security. The name check process determines, inter alia, whether the applicant's identifying information (i.e., name, social security number, or date of birth) matches that of an individual whose name has been recorded in the FBI's databases in connection with an FBI investigation.

---

[5] The FBI does not adjudicate naturalization applications. See Cannon Decl. ¶ 40.

See Cannon Decl. ¶ 11.  Thus, if an applicant is a suspected criminal and/or terrorist, or a known associate of such a person, the name check process should reveal that information.  When conducting its name checks, the FBI reviews records in its Central Records System ("CRS"), which contains the FBI's investigative files.  See id. ¶ 4.

Given the obvious national security implications, and the traditional privileges governing law enforcement activities, there is a heavy presumption against judicial review of the pace and thoroughness of the FBI's name check process, or other FBI investigations.  See Bruno, 197 F.3d at 1162.  That presumption against judicial review, when paired with the fact that neither the Mandamus Act nor the Administrative Procedure Act permits judicial review of discretionary agency actions, compels the conclusion that this Court lacks jurisdiction to review Plaintiff's challenge to the pace of the FBI's name checks.

A.    The Name Check Process Is Discretionary and Outside the Scope of APA Review.

Although the APA is not an independent source of subject matter jurisdiction, it operates in tandem with federal question jurisdiction under 28 U.S.C. § 1331 to permit courts to review challenges to certain agency actions.  See Califano v. Sanders, 430 U.S. 99, 107 (1977); Galluci v. Chao, 374 F. Supp. 2d 121, 128 (D.D.C. 2005); Orlov v. Howard, 523 F. Supp. 2d 30, 37 (D.D.C. 2007) (explaining that district courts have jurisdiction to review APA claims that are not "wholly insubstantial and frivolous").  An agency's alleged failure to act is "sometimes remediable under the APA, but not always."  Norton, 542 U.S. at 55.  The APA expressly precludes judicial review of agency actions when "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2); Brock v. Pierce County, 476 U.S. 253, 260 n.7 (1986).  That limitation prevents Plaintiff from using the APA as a means of challenging the FBI's

processing of her name check.

Congress has given the FBI complete discretion to conduct its immigration-related name checks, and that discretion necessarily includes decisions regarding how and when to conduct those investigations. See Pub. Law 101-515, 104 Stat. 2101, 2112 (1990) (providing that the FBI "may" establish and collect fees to process name checks for certain non-criminal justice, non-law enforcement purposes, but imposing no deadlines or other limits on the FBI's discretion). The FBI has determined that "its mission on homeland security requires that its name check process be primarily focused on providing accurate and thorough results." Cannon Decl. ¶ 20. That thoroughness and accuracy cannot be sacrificed for speed. See id.

Plaintiff has identified no statute or regulation imposing any constraints on the FBI's discretion over the name checks it conducts in connection with immigration applications, and Defendants are aware of none. For example, no statutes or regulations force the FBI to limit its background examinations to a fixed period of time. See Safadi v. Howard, 466 F. Supp. 2d 696, 700 (S.D.N.Y. 2006); Shalabi v. Gonzales, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23, 2006) (denying plaintiff's request that the court compel that plaintiff's name check be expedited); Hu v. Chertoff, 2007 WL 1515067, at *6 (E.D. Cal. May 22, 2007) ("[T]here are no governing statutes or regulations specifying a time limit for processing an [legal permanent resident] application or completing a FBI name check."); Tan v. Chertoff, Civ. No. 04:07-236-HEA, 2007 WL 1880742, at *3 (E.D. Mo. June 29, 2007). Thus, the overwhelming majority of courts who have squarely addressed this issue have recognized that they lack jurisdiction to dictate the terms or pace of FBI background investigations, under the APA or any other statute. See, e.g., Omar, 501 F. Supp. 2d at 640 (finding no APA jurisdiction to review 'unreasonable delay' claim

10

concerning FBI's completion of name check for naturalization applicant); <u>Elsayed v. Gonzales</u>, 2007 WL 2792453, at *2, *3 (D. Colo. Sept. 25, 2007) (noting "overwhelming case law that there is no jurisdiction over the FBI in name check cases); <u>Konchitsky v. Chertoff</u>, No. Civ. 07-00294-RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007) (noting that "courts squarely addressing the issue of whether they have jurisdiction to compel the FBI to perform name checks in connection with adjustment of status petitions have overwhelmingly concluded that they do not"); <u>Shalabi</u>, 2006 WL 3032413, at *5 (concluding court lacked jurisdiction to compel FBI to complete name checks); <u>Sozanski v. Chertoff</u>, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (finding no APA or Mandamus Act jurisdiction to compel FBI to complete name check).

To the extent that Plaintiff is arguing that USCIS should be required to request an expedited background check, that, too, is a discretionary decision which cannot be reviewed under the APA. The INA makes successfully completed background checks a precondition for naturalization, but neither specifies a time frame in which those checks should be completed, nor identifies situations in which the background checks should be expedited. In the absence of such specific language, USCIS has discretion to establish the procedures or policies governing requests to expedite background checks. <u>See</u> <u>Omar</u>, 501 F. Supp. 2d at 639-40. That plenary discretion precludes judicial review. <u>See</u> <u>Drake v. FAA</u>, 291 F.3d 59, 70-71 (finding agency actions unreviewable where Congress gave agency broad discretion). USCIS has established guidelines for requesting an expedited name check from the FBI. <u>See</u> Brown Decl. ¶ 13. However, Plaintiff has not submitted evidence establishing that she meets the criteria for expedited processing. <u>See</u> <u>id.</u> Accordingly, USCIS has not requested an expedited background check in this case. <u>See</u> <u>id.</u>

Moreover, exercising APA jurisdiction in this case would be contrary to the D.C.

Circuit's admonition that courts should not intervene in agency delay cases when "a judicial

order putting the petitioner at the head of the queue would simply move all others back one

space and produce no net gain." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d

1094, 1100 (D.C. Cir. 2003). Defendants and the numerous individuals with pending

naturalization and adjustment of status applications have a strong interest in processing name

checks in an orderly fashion and ensuring that all applicants are treated the same. Allowing any

applicant that files a lawsuit to leapfrog to the head of the queue would be contrary to those

interests, and potentially would lead applicants with pending background checks to flood the

federal courts with mandamus actions in order to obtain that advantage. As the Eastern District

of Virginia has recognized,

> to grant relief in this case would set a dangerous precedent, sending a clear signal
> that more litigious applicants are more likely to be moved to the top of the
> proverbial pile over other applicants that have waited even longer. Such a
> situation hardly optimizes resources, and serves only the individual at the
> detriment to the group.

Dmitrenko v. Chertoff, No. 07-82, 2007 WL 1303009, at * 1 (E.D. Va. Apr. 30, 2007); see also

id. at n. 1 ("To grant relief to today's petitioners, compelling adjudication of their application

over persons that have waited even longer, would be far from equitable."). That is particularly

true given that there are approximately 1,134 naturalization applications awaiting interviews at

the Miami District Office[6] in which name checks have been pending longer than Plaintiff's, and

over a hundred thousand naturalization applicants nationwide waiting for their name checks to

---

[6] The Miami District Office is the office which would conduct the examination because
Plaintiff resides in Southern Florida.

be completed.  <u>See</u> Brown Decl. ¶ 15; Cannon Decl. ¶ 26 (noting that as of the end of fiscal year

2006 there were over 364,000 pending USCIS name check requests).  Indeed, many individuals

seeking naturalization or other immigration benefits have had name checks pending for three to

five years, whereas Plaintiff's naturalization application and name check have been pending less

than two years.  <u>See, e.g.</u>, <u>Saleh v. Ridge</u>, 376 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding no

unreasonable delay where adjustment of status application had been pending five years due to

incomplete name checks); Opp. at 16 (stating that naturalization applications may remain

pending two to four years due to pending name checks).

   **B.**  **There is No Mandamus Jurisdiction For Similar Reasons.**

   The discretionary nature of the FBI's name check process also precludes mandamus

jurisdiction.  As explained <u>supra</u>, the Mandamus Act applies only when the agency has a "clear,

nondiscretionary" duty to act, and the plaintiff has a "clear right to relief."  <u>See</u> <u>Orlov</u>, 523 F.

Supp. 2d at 37-38.  Plaintiff can point to no clear and indisputable right to have the name checks

completed within a specific time frame, and the FBI has no statutory or regulatory duty to limit

background examinations to a fixed period of time.  Thus, the Mandamus Act does not confer

jurisdiction to review the pace or any other aspect of the FBI's name check investigations.  <u>See</u>

<u>Sozanski</u>, 2006 WL 4516968, at *1; <u>Omar</u>, 501 F. Supp. 2d at 639; <u>see</u> <u>generally</u> <u>Orlov</u>, 530 F.

Supp. 2d at 38 (finding plaintiff not entitled to mandamus relief concerning pace of adjudication

of adjustment of status application because he had no clear right to have the application

processed more quickly).  Likewise, there are no laws or regulations that give USCIS a non-

discretionary duty to request expedited background checks in this context, and therefore the

Mandamus Act does not provide a basis for this Court to order USCIS to do so.

IV.    **PLAINTIFF'S ATTEMPTS TO DISCREDIT THE USCIS REGULATIONS AND POLICIES CONCERNING NAME CHECKS WERE NOT RAISED IN THE COMPLAINT AND LACK MERIT.**

    A.    **Plaintiff's Challenges to the Use of Background Checks And the USCIS Regulations Governing Naturalization Interviews Are Not Properly Before the Court.**

Plaintiff's complaint does not include an APA claim alleging that the USCIS regulations governing naturalization interviews and/or Defendants' policies regarding name checks are arbitrary, capricious, or otherwise contrary to law.  Nonetheless, the opposition brief includes lengthy and meritless attacks upon the validity of  8 C.F.R. § 335.2(b) and USCIS's use of FBI background checks, and the proposed relief is for an order from this Court requiring Defendants to conduct a notice and comment period regarding the use of background and name checks.  See Opp. at 8-11, 13-17, 22.  Plaintiff cannot use an opposition brief to bring such claims into this litigation.  See DSMC, Inc., 479 F. Supp. 2d at 84.  Further, those arguments are at best tangential to the issue presented here — namely, whether USCIS has a mandatory duty to complete its adjudication of Plaintiff's naturalization application while her name checks remain pending.  Thus Defendants respectfully submit that this Court should not conduct an inquiry into the validity of those regulations and policies while reviewing the instant motion to dismiss.[7]

    B.    **Plaintiff's Attacks Upon Defendants' Policies and Regulations Lack Merit.**

        1.    **8 C.F.R. Section 335.2 Was Properly Issued And Is Binding.**

---

[7] In the event that the Court chooses to conduct such an inquiry, supplemental briefing would be necessary and Defendants would need time to prepare a record on which such a claim could be reviewed.  However, in the paragraphs that follow, Defendants have included a preliminary response to the arguments raised in the opposition brief.

Plaintiff contends that USCIS's determination that naturalization examinations should not be scheduled while FBI background checks remain pending arises from a policy change made in 2006 that was designed to thwart the protections of the INA. See Opp. at 13-14. However, the regulations requiring that naturalization interviews be scheduled only after USCIS receives the results of the applicant's background checks are set forth at 8 C.F.R. § 335.2(b). Section 335.2 was announced as an interim rule and published in the Federal Register more than ten years ago, on March 17, 1998; comments were accepted through May 18, 1998. See 63 Fed. R. 12979 (1998). The six year statute of limitations for claims against the federal government bars Plaintiff from challenging that rule in this case. See 28 U.S.C. 2401; Harris v. FAA, 353 F.3d 1006, 1014 (D.C.Cir. 2004) (finding that APA challenges must be filed within six years "[u]nless another statute prescribes otherwise").

### 2. The INA Authorizes USCIS To Rely Upon FBI Background Checks, Including Name Checks, When Adjudicating Naturalization Applications.

Plaintiff also claims that USCIS "expanded the FBI name check" in November 2002, without notice-and-comment rulemaking, and that this allegedly 'expanded' name check is not the type of criminal background check that Congress contemplated. Opp at 8-9. Relatedly, Plaintiff cites a recent case from the Eastern District of Pennsylvania, and contends that the name check program is not authorized by statute or regulation. Opp. at 9-10 (discussing Mocanu v. Mueller, 2008 WL 570953 (E.D. Pa. Feb. 28, 2008). Neither argument has merit.

Plaintiff cites no authority for her conclusory assertion that in 2002 USCIS expanded the name check program and made name checks a requirement for adjudication of naturalization applications. Public Law 105-119 makes completed background checks a prerequisite to the

adjudication of naturalization applications.  Specifically, as USCIS explained in <u>1998</u>, that

Public Law "codifie[d] current Service policy that the Service must receive confirmation from

the Federal Bureau of Investigation that a full criminal background check has been completed on

applicants for naturalization before final adjudication of the application."  63 Fed. R. 12979.

The regulations announced in 1998 indicated that a definitive response from the FBI regarding

completed background checks includes confirmation that neither an "administrative" nor

"criminal" record existed on the applicant.  <u>Id.</u> (announcing language for 8 C.F.R.

§ 335.2(b)).

      USCIS has interpreted the statutory requirement that a "full criminal background check"

be completed prior to the adjudication of naturalization applications to mean that it must request

both a fingerprint check and a name check from the FBI.  <u>See</u> USCIS Fact Sheet, Immigration

Security Checks — How and Why the Process Works (Exh. 1 hereto).  Congress did not define

the term "full criminal background check."  Pub. L. No. 105-119.  Therefore, USCIS's

interpretation of that term must be given substantial deference.  <u>See</u>  <u>Chevron USA v. Natural</u>

<u>Resources Defense Council</u>, 467 U.S. 837, 842 (1984); <u>Vermont Yankee Nuclear Power Corp. v.</u>

<u>NRDC</u>, 435 U.S. 519, 543 (1978); <u>California Valley Miwok Tribe v. United States</u>, 515 F.3d

1262, 1266 (D.C. cir. 2008) (applying <u>Chevron</u> deference although agency interpretation was not

announced in a formal rule); <u>Mylan Labs., Inc. v. Thompson</u>, 389 F.3d 1272, 1279-80 (D.C. Cir.

2004) (same).  Such deference is "especially appropriate in the immigration context."  <u>INS v.</u>

<u>Aguirre-Aguirre</u>, 526 U.S. 415, 425 (1999).  USCIS's interpretation of its own regulation, <u>i.e.</u>

Section 335.2, is afforded even more deference.  <u>See</u> <u>Thomas Jefferson Univ. v. Shalala</u>, 512

16

U.S. 504, 512 (1994); Fabi Const. Co., Inc. v. Secretary of Labor, 508 F.3d 1077, 1080-81 (D.C. Cir. 2007).

The vast majority of courts that have construed 8 C.F.R. § 335 have concluded that it authorizes USCIS to include the FBI name check as part of the required "full criminal background check." See Wang v. Gonzales, 2008 WL 45492, at *2 (D. Kan. Jan. 2, 2008); Morral v. Gonzales, 2007 WL 4233069, at *1, n.2 (D. Minn. Nov. 28, 2007); Stepchuck v. Gonzales, 2007 WL 185013, at *2 (W.D. Wash. Jan. 18, 2007); Aman v. Gonzales, 2007 WL 2695820, at * 3 (D. Colo. Sept. 10, 2007); Shalabi, 2006 WL 3032413, at *2. Those courts' conclusions contradict the holding in Mocanu, and reflect the correct application of the APA. Mocanu misinterprets the statute and regulations, and conflicts with the Supreme Court's admonition that courts conducting APA review should not substitute their judgment for that of the agency. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983); accord Mount Royal Joint Venture v. Kempthorne, 477 F.3d 745, 753 (D.C. Cir. 2007).

Plaintiff also appears to suggest that the name checks conducted after November 2002 are different from the checks conducted prior to that date, and that those modifications violate the APA. Opp. at 8-9. The FBI has explained that in November 2002, heightened national security concerns prompted a review of the background investigation procedures, and that the FBI altered its background check search criteria to include reference files, so that matches to FBI records would not be missed. See Cannon Decl. ¶ 23. That modification of the search criteria was made because the agencies "determined that deeper, more detailed clearance procedures were required to protect the people and the interests of the United States effectively." Id. ¶ 23. That

assessment was well within Defendants' discretion to implement policies that promote national security.  See generally Bruno, 197 F.3d at 1159.

> **3.     There Is No Basis For this Court to Disturb Defendants' Conclusion that National Security Concerns Make Background Checks (Including Name Checks) Necessary.**

Plaintiff's contention that background and name checks have little benefit, and that Defendants have not adequately explained their utility, further illustrates her mistaken belief that this Court should set immigration policy rather than deferring to Defendants' judgments concerning national security and immigration matters.  See Opp. at 14-16.  The "USCIS Ombudsman" whose remarks Plaintiff has quoted is not a part of USCIS.  The Ombudsman reports to the Secretary of the Department of Homeland Security, and his function is to identify problems individuals and employers have with USCIS, and to propose solutions to those problems.  See  5 U.S.C. § 452(b).  The Ombudsman does not have the authority to dictate the terms upon which naturalization applications will be adjudicated, or to eliminate the background check requirement.  See id.  Defendants do have the authority to establish adjudication procedures,[8] and have concluded that "it is vitally important to thoroughly screen each applicant in order to resolve concerns of a law enforcement or national security nature before determining that an individual is eligible for an immigration benefit."  Brown Decl. ¶ 11.  The FBI has defined the scope of its name checks in accordance with its "mission on homeland security," which requires that it focus on providing "accurate and thorough results."  Cannon Decl. ¶ 29;

---

[8] Of course, neither USCIS nor the FBI can suspend the background check requirement, because Congress established that rule.

see also id. ¶ 26 (discussing post-9/11 security concerns prompting review of the name check procedures).

## V.    PLAINTIFF'S ALLEGATIONS OF DISCRIMINATION ARE MERITLESS.

Plaintiff asks the Court to determine whether Defendants' submission of a motion to dismiss is evidence of discrimination against Plaintiff as an Arab and a Muslim.  Opp. at 14. Plaintiff also claims that Defendants and the Department of Justice are delaying naturalization adjudications in order to prevent Arabs and Muslims from voting against the Republican Party in the 2008 election.  Opp. at 8, 12.  Like most of the other arguments in the opposition brief, that claim goes far beyond the scope of Defendants' motion to dismiss, and therefore is not properly addressed in resolving the instant motion.  Further, Plaintiff's allegation that Defendants' submission of a motion to dismiss constitutes discrimination was not raised in the complaint.[9] In any event, there is no basis to infer that Plaintiff is being treated differently because of her race or religion.  USCIS is processing Plaintiff's naturalization application in accordance with its regulations and the INA, and the FBI is processing the background checks in accordance with its standard policies and practices.  See Brown Decl. ¶¶ 4, 10; Cannon Decl. ¶ 41.

---

[9] Plaintiff's assertion that the government has violated ethics rules is equally lacking in merit.  This Court has already rejected Plaintiff's claim that Defendants' enlargement motion did not comply with Local Civil Rule 7(m), by granting the enlargement and denying Plaintiff's motion to strike.  Defendants' motion to dismiss was properly filed and served through the Court's CM/ECF system.  See L. Civ. R. 5.4(d)(1).

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Motion to Dismiss, the

Motion to Dismiss should be GRANTED and Plaintiff's claims should be DISMISSED.

Dated: April 7, 2008                    Respectfully submitted,


                                        _____/s/_____
                                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                                        United States Attorney


                                        _____/s/_____
                                        RUDOLPH CONTRERAS, D.C. BAR #434122
                                        Assistant United States Attorney


                                        _____/s/ Robin M. Meriweather_____
                                        ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                        Assistant United States Attorney
                                        555 Fourth St., N.W.
                                        Washington, D.C.  20530
                                        Phone: (202) 514-7198
                                        Fax: (202) 514-8780
                                        Robin.Meriweather2@usdoj.gov

Press Office
U.S. Department of Homeland Security



# Fact Sheet

April 25, 2006

## Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

Reply In Support of Defendants' Motion to Dismiss--Exhibit 1

**How Immigration Security Checks Work**

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check—** IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check—**FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks—**FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

several years to resolve.  Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided.  USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.