## U.S. DISTRICT COURT
## FOR
## THE DISTRICT OF COLUMBIA

Rola HAMANDI                                    *
1816 S.W. 4th Avenue
Pompano Beach, Fla. 33060,                       *
          Petitioner
                              *

        v.                                   Case No. 1:07-CV-2153 ESH
                              *

Michael CHERTOFF, Secretary
U.S. Department of Homeland Security             *
425 Murray Drive; Building 410
Washington, D.C. 20528,                          *
          Respondent
                              *

Emilio T. GONZALEZ, Ph.D., Director
U.S. Citizenship & Immigration Services          *
20 Massachusetts Avenue N.W.
Washington, D.C. 20529,                          *
          Respondent
                              *

Robert S. MUELLER III, Director
Federal Bureau of Investigation                  *
935 Pennsylvania Avenue N.W.
Washington, D.C. 20525,                          *
          Respondent

### REPLY SUPPORTING OPPOSITION TO MOTION TO DISMISS

COMES NOW THE PETITIONER, Rola Hamandi, by and through cousnel, and again

respectfully requests this Honorable Court to deny Respondents' Motion to Dismiss.  In support

of her request, Mrs. Hamandi states as follows:

#### Jurisdiction

1. The government again appears to be making smoke without fire.  The attorneys from

the U.S. Department of Justice totally misread the Federal Rules of Civil Procedure, the law, the

roles of the U.S. Citizenship and Immigration Services (USCIS) and the Federal Bureau of Investigation (FBI).

2. In footnote 1 on page of Respondents' Reply in Support of Defendants' Motion to Dismiss, the government states that Petitioner filed her Opposition to the government's Motion to Dismiss after the time for doing so expired. Respondents filed their Motion to Dismiss on March 12, 2008 (without providing a copy to the Undersigned). Mrs. Hamandi filed her Opposition on March 28, within the 20 day time limit to respond embodied in Federal Rule of Civil Procedure 12.

3. Throughout all of its pleadings, the government insists that this Honorable Court does not have Subject Matter Jurisdiction.   The government has asserted in its Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) that this Honorable Court does not have subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1361, the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 704. According to the U.S. Attorney's argument, it has not unlawfully withheld any action, the FBI's name check is not legally required by a date certain, and that there is no statutory requirement to adjudicate Petitioner's Application for Citizenship. Further, the U.S. Attorney asserted that Congress did not specify any time frame within which USCIS is to conduct naturalization proceedings, should it so choose, adding that Congress doesn't permit aliens to have recourse to U.S. courts except in very limited circumstances. The government goes on to say that federal courts may not set deadlines for agency action.

4. The government is wrong and its argument supports unconscionable behavior by U.S. agencies. 28 U.S.C. § 1331 provides a general grant of subject mater jurisdiction to federal

district courts in civil actions over "federal questions" arising under the laws of the United States. The Supreme court has found that 28 U.S.C. § 1331 serves as the jurisdictional basis for federal courts "to review agency action". Califano v. Sanders, 430 U.S. 99 (1977).

5. Apparently, in its "argument", the government is raising a jurisdictional challenge while simultaneously claiming that the grounds for a valid cause of action are insufficient. *See* Steel Co. v. Citizens for a Better Environment 523 U.S. 83, 89 (1988). *See also* Ahmed v. DHS, 328 F.3d 383, 386-87 (7th Cir. 2003). (Distinguishing between the court's power to adjudicate the case, which is jurisdictional, and the court's power to grant relief, which is not jurisdictional.)

6. Failure to state a valid cause of action calls for a judgment on the merits and not for dismissal for want of jurisdiction. Bell v. Hood, 3237 U.S. 678, 682 (1946). The Supreme Court made pellucidly clear that:

> jurisdiction...is not defeated...by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. Rather, the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the laws of the United States are given one construction and will be defeated if they are given another...'

Steel Co. 523 U.S. at 89 (quoting Bell, 327 U.S. at 682, 685. Thus, the Ahmed court has held that in resolving whether mandamus jurisdiction is present in an immigration case, the allegations of the complaint are taken as true (unless patently frivolous) to avoid "tackling the merits under the ruse of assessing jurisdiction." Ahmed, 328 F.3d at 386-387.

7. Applying these principles, the 7th Circuit held in Ahmed that the question of whether a statute imposed a "duty" on the government for purposes of mandamus relief was not a jurisdictional question. As the court explained:

> [T]he district court has jurisdiction under § 1361 (the mandamus statute) to

3

determine whether the prerequisites for mandamus relief have been satisfied: does the plaintiff have a clear right to the relief sought; does the defendant have a duty to perform the act in question; and is there no other adequate remedy available...A conclusion that any of those prerequisites is missing should lead the district court to deny the petition, not (for lack of jurisdiction) but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief. Ahmed, 328 F.3d at 386-87

8. THEREFORE, this is not a jurisdictional question and cannot lead to dismissal under Rule 12(b)(1). To reiterate, (1) Mrs. Hamandi has a clear right to relief: she has applied for naturalization as a citizen of the United States of America in accordance with the law, to wit, The Immigration and Nationality Act (INA), § 310 *et seq.* (8 U.S.C. § 1421 *et seq.*) As a Legal Permanent Resident, she seeks protection under the laws of the United States and her "clear right" to relief falls within the "zone of interests" of the INA, i.e. the interests sought "to be protected are within those...to be protected or regulated by the statute..." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 150 (1970). (2) The INA prescribes as mandatory (or ministerial) an investigation of an applicant for naturalization. This investigation may be waived in an individual case. INA § 335(a). § 335(d) reads: "The employee designated [by the Attorney General of the United States ] to conduct any such investigation shall make a determination as to whether the application should be granted or denied, with reasons therefor." In the instant case, the government apparently has not taken any action on Ms. Hamandi's application, either to investigate her, or to waive the investigation, or to grant citizenship or to deny her application. To date, governmental inability or unwillingness to act has lasted nearly 24 months. (3) There is no other remedy at law available to Petitioner. Under the INA (§ 310), USCIS has sole responsibility for granting the naturalization of aliens.

4

9.  Essentially, the government's assertion that this matter is committed to agency discretion and therefore exempt from the Administrative Procedure Act (APA) and the Mandamus statute jurisdiction for failure to identify "a clear duty to act" is incorrect. The government does not, repeat not, have the option of whether or not to act on applications made to it. All of the cases cited by the government in its voluminous pleadings flow from this basic erroneous premise. Additionally, the government has incorrectly asserted that there is no statutory or regulatory timetable for its background investigation. In fact, the regulations establish the set timetable that has been ignored here for review of any alleged investigation. 8 C.F.R. § 103.2(b)(1). The government also incorrectly asserts this portion of its decision as discretionary. Instead, as the Undersigned has repeatedly noted, there is a non-discretionary duty to adjudicate.

10.  In the naturalization context, this duty is set forth at 8 C.F.R. § 316.14(b)(1) (as cited in Kaplan v. Chertoff, 481 F. Supp. 2d 370 (E.D. Pa. 2007). In the end, the baseline determination that the name check provides is one of statutory eligibility to determine whether an applicant is of "good more character" which is a statutory requirement under 8 U.S.C. § 1427(a), see also § 1427(d) and (e). The name check is part of a statutory eligibility determination, not a discretionary one. This case involved a duty to adjudicate that statutory question. Cf. Pinho v. Gonzalez, 432 F.3d 193, 204 (3rd Cir. 2005). (Determination of legal eligibility for adjustment of status is a legal, not a discretionary, determination.)

11.  The agency failure to act on Mrs. Hamandi's application for citizenship is sufficiently definitive to make this matter ripe. The inaction and refusal to appropriately review her N-400 under 8 C.F.R. 103.2(b)(18) operates as a denial of the application and does have an adverse

impact on Mrs. Hamandi. Even if she is permitted to maintain legal status in the U.S., the failure

of the government to do its duty has eroded her (and others') confidence in the American legal

process. A refusal to act that functions as a denial affects the Petitioner every day. The agency

inaction meets the first three steps in a ripeness analysis. See FTC v. Standard Oil, 449 U.S. 232,

2390240 (1980).

12. Again, seen in the context of a refusal to act, the decision is purely a legal one--

whether the agency chooses to follow regulations relating to: (1) the duty to adjudicate; and (2)

the timely processing and review of "investigations" being made into an applicant's background.

This Honorable Court's assertion of jurisdiction and examination of whether the agency is, in

fact, following its own procedures, would speed enforcement of the right to an adjudication of

Petitioner's application. This situation would meet the fourth and fifth parts of the FTC

standard. Id.

## "Line-Jumping"

13. As an additional factor, the Undersigned notes the government asserts that this action

would only serve to allow Mrs. Hamandi to have her case heard before others who have not filed

in federal court. This assertion belies the fact that Petitioner is not asking to be placed in front of

people who filed their claims with the agency before her. She is merely asking to be placed in

the same position as those USCIS claims it is serving now. According to the USCIS website, the

government is processing this matter in a different way than other identical cases. Its standard

processing times indicate that it currently completing citizenship applications filed on May 14,

2007. Petitioner Hamandi filed hers with the Service on July 31, 2006. Compare Exhibit 1,

Petitioner's Receipt Notice, with the government processing dates given by the USCIS Miami

District Office, Exhibit 2. The disparity in dates is nearly an entire calendar year and this application has been pending for nearly two calendar years. By way of comparison, the Regulation governing the investigative review of like cases would now require a review by the Director of USCIS in Washington, D.C. (a Respondent in this matter), and not simply a District or Regional Director. 8 C.F.R. § 103.2(b)(18). Again, it is in factual dispute whether any such investigation has occurred, let alone that it has been reviewed in accordance with the applicable regulation.

14. Mrs. Hamandi is not, as the government asserts, trying to jump a line. Nor is she claiming a right to an adjudication within a particular time frame. She is merely trying to regain her proper place in line and receive a decision on an application that has been effectively denied through inaction. The claim is for adjudication "in a reasonable time" as set forth in USCIS regulations and s required under the APA. See Kaplan v. Chertoff. Also see Kim v. Klapakas, Civil Action No. 06-05589 (E.D. Pa. 2007). At least one other Judge in that District has accepted a claim on the same premise and cited to the government's published processing times. Song v. Klapakas, (Stengel, J.) , 2007 U.S. Dist. LEXIS 27203 at *4 (E.D. Pa April 12, 2007).

### Who's in Charge of Name Checks?

15. The Undersigned also notes that the declaration provided by Mr. Cannon of the FBI in the instant case contradicts a declaration provided relating to name check clearances in the naturalization context. Compare Document 12-3 of Motion to Dismiss, Declaration of Michael Cannon, FBI with that Motion's Document 12/2 , Declaration of Joyce A. Brown, USCIS officer. Cannon asserts in paragraphs 19, 39, and 40 that USCIS controls the name check requirements. In paragraph 12 of her declaration, Brown claims that the FBI has full control of these

same requirements: "*Cases with pending FBI name checks are not considered to be within the control of USCIS.*"

16. Both of these agency affidavits engage in a finger-pointing tarantella: each blames the other agency for the delay in citizenship name checks. USCIS claims it can't confirm whether the FBI undertakes an investigation or even whether such an investigation would be related to national security (whatever that is). Id. at para. 6 & 7. As noted above, the FBI insists that it is not the agency charged with the adjudication but cf. Kaplan supra.

17. The declaration from USCIS purports to provide an explanation for the USCIS actions in the name check process. First, it acknowledges that the FBI is the agency in control of the name check file. See Decl. of Joyce Brown para. 5, 6, & 7 ("...USCIS ensures that the FBI has, in fact, received all requests for name checks."). This is of central importance for two reasons: first, the FBI functions as the designee of the USCIS (In Kaplan, the court stated "Under these limited circumstances, where Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through CIS, to complete the background checks, the Court holds that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks. Since the FBI has a mandatory duty to act, the APA requires that the FBI complete the criminal background checks in a reasonable amount of time." Internal note omitted); and second, USCIS has no way of knowing what the FBI is doing with its name check files: FBI Query reports do not provide USCIS with any indication as to what information the FBI may have relating to a particular alien, whether an FBI investigation into the particular alien has been undertaken, or **whether there are national security concerns relating to that alien**" (Emphasis added.) The USCIS declaration also

8

indicates that, even if a case is outside of the standard time as posted on the agency website, that is not evidence that a delay is unreasonable "due to factors within the control of USCIS" Id. para. 12. Thus, by its own terms, the USCIS declaration acknowledges it has no control over the investigation and provides no information directly from the agency in control of that investigation, i.e., the co-Respondent FBI. In short, it provides no insight into the actual handling of this type of case.

18. The implication from the repeated government statements regarding the processing of name checks, i.e., on a first in-first out basis, versus its claimed intent to work through the backlog of nearly 3 million applications for adjustment of status and for citizenship by Summer 2008 (Exhibit 4) is that no real security or investigative purpose is being served by the current name check program and there is no reason for the government to treat people stuck in that system differently from people who are not in it.

19. It is also extremely telling that the government provides no information as to the time frame in which the instant case has been handled. Specifically, there is no indication of any individual review in accordance with 8 C.F.R. § 103.2((b)(18). The government has not even addressed the primary factual allegation made by Petitioner Hamandi: that the agency has failed to act in a timely manner in accordance with its requirements to review "investigations" and its duty to adjudicate. (8 C.F.R. § 103.2(b)(18); 8 C.F.R. § 245.2(a)(5) and Kaplan supra.) As such, its Motion to Dismiss and its Reply in Support of its Motion to Dismiss would be viewed in the context of a Motion for Summary Judgment. As such, they must fail because of a continuing factual dispute that may be best suited by conducting discovery in this matter so as to best ascertain what the exact timeliness for the actions that USCIS has asserted it undertakes.

## National Insecurity

20.  In its voluminous pleadings, the government repeatedly cites to issues of national security (whatever they may be) and moral fitness as being cardinal issues for USCIS and the FBI.  Again, the lack of action and the admitted lack of funding for such an allegedly important task as the FBI name check program belies the government's arguments on this issue.  If "National Security" is not an issue, there is no justification for this delay.  Again, at its base, the instant case is not about a discretionary determination on naturalization.  It is about an agency that has too often shirked its responsibilities both to the applicants for naturalization and the public it is obligated to serve.  The "good moral character"determination is a statutory requirement , and it is not discretionary.  If the FBI is "short-staffed", it should be noted that a fee is charged for "biometric clearance".  Any serious approach to national security would not allow name checks to go un-performed for almost two years.

21.  By its actions in flooding the Court with a spring tide of pleadings, the government is again seeking to delay this matter for its own ends, rather than for the rights of its citizens or legal permanent residents.  Despite its voluminous and somewhat tiresome pleadings about the FBI's great care and thoroughness in assessing every possible record that might possibly mention an applicant for citizenship, the government, perhaps not unsurprisingly, omits all reference to recent USCIS and FBI decisions designed to "expedite" and "eliminate" the backlog of FBI name checks.  On February 28, 2008, USCIS announced that adjustment of status applicants whose FBI name checks had been pending for more than 180 days would have their applications for permanent residence adjudicated forthwith.  Should USCIS receive derogatory information on the applicant, conceded as "unlikely", the Service would then detain the applicant and place him

10

in removal proceedings. (See Exhibit 3). On April 2, 2008, USCIS and the FBI announced that they would "prioritize" name checks, something which the government, in all its pleadings, claims is not possible due to (1) too many applications; (2) too much detail to be got through; and (3) the ever-present "threat of terrorists" (other than John Yoo). According to the news release (Exhibit 4), the government will be all caught up in July 2008 for name checks pending for more than 2 years. Since Mrs. Hamandi's application for naturalization has been delayed for nearly two years to date, it appears as if the government is surreptitiously seeking a way out of performing its duty to her and avoiding paying her reasonable attorney's fees and costs. That is, the government desperately fears this Honorable Court deciding that it should treat Mrs. Hamandi at least as well as a Legal Permanent Resident and adjudicate her petition forthwith. (But then, she might be able to vote in the Fall election and, perhaps, vote for a candidate other than the one selected by the Republican Party.)

22. In this shady light, it is "interesting" to note that the government's two factual assertions seem to contradict each other. On the one hand, the government professes the importance of national security. On the other hand, it claims that the lack of funding for the FBI name check process is the reason for delays like the ones experienced by Petitioner Hamandi and that the root cause is an insufficient budget. In truth, the current unconscionable backlog in "security" clearances has very little to do with security and no deference should be given on that issue. The current program stands in violation of the statutory and regulatory directive for periodic six month reviews of "investigations". 8 C.F.R. § 103.2(b)(18). By the government's own admission, no such investigation has been demonstrated. If we dare to presume that the government complies with its own regulations, this would mean that there is not, and never was,

an investigation into the instant case. The name check program, as it is currently structured, is a an unfunded administrative and Executive branch mandate not appropriated by Congress. If it were truly a matter of national security, it would be a priority and the funding would be made available.

## Ignorance (of the Regs) is Bliss--for Some

23. Additionally, contrary to what the government asserts in its Motion to Dismiss and in its Reply in Support thereof, Michael Cannon, in paragraph 23 of his Declaration states categorically that in November 2002 "deeper, more detailed clearance procedures were required to protect the people and the interests of the United States effectively...Before November 2002, only those 'main' files that could be positively identified with an individual were considered responsive to the litigation authorities name check requests...the FBI altered its search criteria to include 'reference' files as well...this meant the FBI was required to review many more files in response to each individual background check request...From a processing standpoint, this meant the FBI was required to review many more files in response to each individual background check request. " Not unsurprisingly, Mr. Cannon says not one word in his Declaration about how this change did not result, as it should have, in a Proposed Rule being published with ample time for Notice and Comment, as the APA requires. 5 U.S.C. § 553. This expanded FBI name check was, as Mr. Cannon admitted, a substantive departure from prior USCIS policy because it imposed a new requirement in naturalization procedure not based on statute or regulation and because it has had a substantial adverse impact on applicants for naturalization by causing significant delays in adjudication.

24. USCIS and the FBI have provided no explanation for the delay in processing this

case. Their failure to act is not excusable. The investigation and adjudication have been
"unreasonably delayed" and further inaction is "arbitrary, capricious, and contrary to the law."
The inaction and failure to file reports or reviews of its alleged investigations is a violation of the
government's own regulations and procedures. It merits intervention by this Honorable Court.
This is not a situation, as asserted by the government in a similar case, in which the "decision on
**when** to conduct an examination **after** the background check has been has been completed is
within the discretion of the agency. Government Brief in <u>Omar v. Mueller,</u> Case No. 07-cv-813
(D. N.J. pending) at para. 16 (Emphasis added). If this Honorable Court were to accept that
extreme position, it would mean that USCIS could, after whatever interminable delay is inflicted
by the FBI name check process, initiate another interminable delay or even decide never to
adjudicate at all. In reality, the appearance is that the agencies have already chosen a path of
non-adjudication, particularly in cases involving Muslims and Arabs. Cf. <u>Adil Amrani et al.
Plaintiffs-Petitioners v. Susan Dugas et al. Defendants.</u> Case No. 6:08-cv-246-ORL-18-KRS.
U.S. District Court for the Middle District of Florida. Filed 0211912008. USCIS and FBI
inaction and refusal to adjudicate clearly run afoul of the agencies' own regulations (8 C.F.R. §
316.14 and 8 C.F.R. § 103.2(b)(18) and represent a failure to exercise discretion which is clearly
reviewable with a remedy available through mandamus and the APA.    This is not a case in
which the Court will be called upon to arbitrarily set a deadline. Rather, this Honorable Court
can apply a standard of law and a duty to adjudicate that are clearly in the regulations and the
statute and require action in a reasonable time frame where that action has been unlawfully
withheld.

    25. Under mandamus, the agencies do not have discretion to ignore their own

regulations. In fact, the 3rd Circuit has remedied such a situation in another immigration context. See Ngo v. INS, 192 F.3d 390, 400 (3rd Cir. 1999), Appendix of Court Opinion providing for Interim Procedures for agency to follow until it provides appropriate implementation of statute and regulations. The failure of the government to make a decision is a violation of the type of duty identified in 28 U.S.C. § 1361. Under Mandamus, this Honorable Court has the power to compel action to perform that duty although it cannot mandate whether the decision is to approve or deny. The refusal to adjudicate is also unlawful and an "unreasonable delay" under the APA.

26. Regarding the outrageous and specious statement set forth in paragraph 16 of Joyce Brown's Declaration "...*plaintiff retains all the rights and benefits of a permanent resident of the United States, including the right to live and work in this country and to travel freely abroad.*", we refer to an expression used in Montana (and other places): "White Man Speak With Forked Tongue." The Undersigned respectfully directs this Honorable Court's attention to Exhibit 5, copies of USCIS Inspection Reports recounting just two illegal and highly discriminatory interrogations of Petitioner Hamandi because she is an Arab and a Muslim. The interrogations covered inter alia her place of birth, her last visit to her parents, last Arab country visited, her college degree, and her employer as well as other information the U.S. government had no right to know. Suppose Immigration pulled Ellen Segal Huvelle aside each time she traveled to Israel and questioned her at length regarding her education, her employer, countries visited, and purpose of her travel?

WHEREFORE, for all the reasons cited herein, and in the original Petition for the Writ of Mandamus, Petitioner Hamandi respectfully requests that this Honorable Court:

I  Deny the government's Motion to Dismiss;

II  Order Respondents to conduct a public notice and comment period to remedy the lack of regulations governing their combined criminal background and name checks, as required by the APA, 5 U.S.C. § 553;

III  Order Respondents to complete a "name check" and "criminal background check" within 30 calendar days of the appropriate Order being signed;

IV.  Order Respondents to schedule a Citizenship Interview within 45 calendar days of the appropriate Order being signed, if no derogatory information is found;

V.  Order Respondents to schedule a Naturalization Ceremony within 60 calendar days of the appropriate Order being signed, if no derogatory information is found and if Petitioner passes the required examination;

VI.  Award reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions were not substantially justified;

VII.  And grant such other and further relief as this Honorable Court, in its wisdom, deems just and appropriate.

April 25, 2008                                    Respectfully submitted,


                                                  Rola Hamandi

By Counsel,

J. Michael Springmann
Law Office of J. Michael Springmann PLLC
4619 Yuma Street N.W.
Washington, D.C. 20016
Tel. (202) 686-4869
Fax (202) 966-1254
E-Mail: springmannslaw@fcc.net
U.S. District Court Bar No. 465099

**U.S. DISTRICT COURT
FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Rola HAMANDI<br>1816 S.W. 4th Avenue<br>Pompano Beach, Fla. 33060,<br>            Petitioner | * <br><br> * <br><br> * |
| v. | Case No. 1:07-CV-2153 ESH |
| | * |
| Michael CHERTOFF, Secretary<br>U.S. Department of Homeland Security<br>425 Murray Drive; Building 410<br>Washington, D.C. 20528,<br>            Respondent | * <br><br> * <br><br> * |
| Emilio T. GONZALEZ, Ph.D., Director<br>U.S. Citizenship & Immigration Services<br>20 Massachusetts Avenue N.W.<br>Washington, D.C. 20529,<br>            Respondent | * <br><br> * <br><br> * |
| Robert S. MUELLER III, Director<br>Federal Bureau of Investigation<br>935 Pennsylvania Avenue N.W.<br>Washington, D.C. 20525,<br>            Respondent | * <br><br> * <br><br> * |

**ORDER**

Having read the pleadings in this matter and having considered the ability of the Federal

Bureau of Investigation (FBI) and other agencies to conduct background investigations and

"name checks" expeditiously when required, it is this _____ day of _____, 2008

ORDERED

that the government's Motion to Dismiss be and hereby is denied; and it is further

ORDERED

that Mrs. Hamandi's Petition be, and hereby, is granted; and it is further

ORDERED

that Respondents publish a proposed rule and conduct a public notice and comment period within 45 days of the appropriate Order being entered to remedy the lack of regulations governing their use of combined criminal background and name checks, as required by the APA, 5 U.S.C. § 553; and it is further

ORDERED

that Respondents complete the background investigation and "name check" on Petitioner within 30 calendar days after entry of this Order; and it is further

ORDERED

that Respondents schedule a Citizenship Interview within 45 calendar days of the appropriate Order being entered, provided no derogatory information has been found, so as to avoid even the appearance of retaliation against Mrs. Hamandi; and it is further

ORDERED

that Respondents schedule a Naturalization Ceremony within 60 calendar days of the appropriate Order being entered, if no derogatory information is found and if Petitioner passes the required examination, so as to avoid even the appearance of retaliation against Mrs. Hamandi; and it is further

ORDERED

that Respondents pay all Mrs. Hamandi's reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions in this matter were not substantially justified.

18

_____
Ellen S. Huvelle
U.S. District Judge

# CERTIFICATE OF SERVICE

I hereby certify that, on April 25, 2008, I served electronically, through the Court's Electronic
Case filing system, the U.S. Attorney for the District of Columbia, Jeffrey A. Taylor, located at
555 4th Street N.W.; Washington, D.C. 20530 with a true and correct copy of the foregoing Reply
Supporting Opposition to Dismiss and Order and Exhibits.

J. Michael Springmann

**EXHIBIT 1**

**PETITIONER'S RECEIPT NOTICE**

**DATED: <u>JULY 31, 2006</u>**

Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-797C, Notice of Action**

# THE UNITED STATES OF AMERICA

| Receipt | | | NOTICE DATE<br>August 07, 2006 |
|---|---|---|---|
| CASE TYPE<br>N400    Application For Naturalization | | | USCIS A#<br>A 078 640 458 |
| APPLICATION NUMBER<br>SSC*001059535 | RECEIVED DATE<br>July 31, 2006 | PRIORITY DATE<br>July 31, 2006 | PAGE<br>1 of 1 |

| APPLICANT NAME AND MAILING ADDRESS | PAYMENT INFORMATION: | |
|---|---|---|
| ROLA HAMANDI<br>1816 SW 4TH AVE<br>POMPANO BEACH FL  33060 | Single Application Fee:<br>Total Amount Received:<br>Total Balance Due: | $400.00<br>$400.00<br>$0.00 |

The above application has been received by our office and is in process. Our records indicate your personal information is as follows:

Date of Birth:          November 24, 1970
Address Where You Live:   1816 SW 4TH AVE
                          POMPANO BEACH FL 33060

Please verify your personal information listed above and immediately notify our office at the address or phone number listed below if there are any changes.

You will be notified of the date and place of your interview when you have been scheduled by the local USCIS office. You should expect to be notified within 730 days of this notice.

If you have any questions or comments regarding this notice or the status of your case, please contact our office at the below address or customer service number. You will be notified separately about any other cases you may have filed.

If you have other questions about possible immigration benefits and services, filing information, or USCIS forms, please call the USCIS National Customer Service Center (NCSC) at **1-800-375-5283**. If you are hearing impaired, please call the NCSC TDD at **1-800-767-1833**.

If you have access to the Internet, you can also visit USCIS at **www.uscis.gov**. Here you can find valuable information about forms and filing instructions, and about general immigration services and benefits. At present, this site does not provide case status information.

**USCIS Office Address:**
U.S. CITIZENSHIP AND IMMIGRATION SERVICES
P. O. BOX 851488
MESQUITE TX 75185-

**USCIS Customer Service Number:**
(800) 375-5283

APPLICANT COPY

SSC$001024421

Form I-797C (Rev. 01/31/05) N

# EXHIBIT 2

## CURRENT MIAMI DISTRICT OFFICE N-400 PROCESSING TIMES

### <u>MAY 14, 2007</u>

### (As of April 10, 2008)



Search  

Advanced Search

Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resources    Press Room

| Print This Page | Back |

## U.S. Citizenship and Immigration Services
## Miami FL Processing Dates
## Posted March 15, 2008

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 13-15 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I… know what kind of services are available to me after I file my application or petition?

### District Office Processing Dates for **Miami FL** Posted March 15, 2008

| | | |
|---|---|---|
| **I-131** | Application for Travel Documents | December 16, 2007 |
| **I-485** | Application to Register Permanent Residence or Adjust Status | August 26, 2007 |
| **I-600** | Petition to Classify Orphan as an Immediate Relative | April 15, 2007 |
| **I-600A** | Application for Advance Processing of Orphan Petition | April 15, 2007 |
| **I-765** | Application for Employment Authorization | December 29, 2007 |
| **N-400** | Application for Naturalization | May 14, 2007 |
| **N-600** | Application for Certification of Citizenship | July 20, 2006 |

| Print This Page | Back |

**EXHIBIT 3**

**QUESTIONS & ANSWERS:
BACKGROUND CHECK POLICY UPDATE**

**February 28 , 2008**



Home > Press Room

# Questions and Answers: Background Check Policy Update

**Q1. What applications are affected by this policy change?**
A1. Applications included in this policy are:

- I-485, Application to Register Permanent Residence or Adjust Status;
- I-601, Application for Waiver of Ground of Inadmissibility;
- I-687, Application for Status as a Temporary Resident Under Section 245A of the Immigration and Nationality Act; and
- I-698, Application to Adjust from Temporary to Permanent Resident (Under Section 245A of Public Law 99-603).

**Q2. How has USCIS changed its national security requirements?**
A2. USCIS has not changed its background check policies for naturalization applications. Recently, the agency did modify its existing guidance for certain applications (see above) where the immigration laws allow for the detention and removal of individuals if actionable information from a FBI name check response is received after approval.

No application for lawful permanent residence will be approved until a definitive FBI fingerprint check and Interagency Border Inspection Services (IBIS) check are completed and resolved favorably. (Please refer to the USCIS Immigration Security Checks fact sheet in the Related Links section of this page for more information.)

**Q3. How has USCIS changed its adjudications requirements?**
A3. For these forms, including applications for lawful permanent residence, USCIS will adjudicate the application based on all required evidence outlined in applicable law and regulation if the application is otherwise approvable, outside of normal processing times, and the FBI name check request has been pending for more than 180 days.

**Q4. What happens if USCIS later receives adverse information from an FBI name check?**
A4. In the unlikely event that Department of Homeland Security, (DHS) receives actionable adverse information from the FBI name check after the application is adjudicated, DHS may detain the applicant and initiate removal proceedings.

**Q5. Why is this policy being implemented?**
A5. This policy change responds to a 2005 DHS Inspector General recommendation that USCIS better align its background check screening policies with those of U.S. Immigration and Customs Enforcement.

**Q6. Is this policy consistent with the national security priorities of USCIS and the Department of Homeland Security?**
A6. Yes. Applications for lawful permanent residence will not be approved until a definitive FBI fingerprint check and Interagency Border Inspection Services (IBIS) check are completed and resolved favorably. In addition, in the unlikely event that DHS receives actionable adverse information after the application is approved, removal proceedings may be initiated.

**Q7. How many applications for lawful permanent residence are immediately affected by this policy change?**
A7. USCIS is aware of approximately 47,000 applications for permanent residence (I-485) cases that are otherwise approvable but have an FBI name check pending. A portion of these cases are both outside normal processing times and have an FBI name check that has been pending for more than 180 days. These cases will be subject to processing under the new policy. USCIS anticipates the majority of the cases that can now be adjudicated will be processed by mid-March 2008.

**Q8. Does this policy change affect naturalization applications?**
A8. No. There is no change in the requirement that FBI name check, FBI fingerprint and Interagency Border Inspection Services (IBIS) check results be obtained and resolved prior to the adjudication of an Application for Naturalization (N-400).

**Q9. How long will it take for USCIS to work through the cases affected by the policy change?**
A9. USCIS has begun identifying cases affected by this policy modification in each field office and service center. Each office will evaluate the pending cases and will adjust their workload accordingly. USCIS anticipates the majority of the cases subject to this policy modification will be processed by mid-March 2008. We recommend customers wait until March 10 before inquiring about their cases. This will allow each office sufficient time to identify and adjudicate pending cases.

**Q10. The memorandum identifies I-485, I-601, I-687 and I-698 forms. Is there a plan to include other forms, specifically nonimmigrant and naturalization, in this policy?**
A10. No.

**Q11. Should customers contact USCIS through the 1-800 customer service number or make an INFOPASS appointment to visit their local office if their case is outside of normal processing times and they believe their application meets the criteria of this new policy?**
A11. For pending applications outside of normal processing times, we recommend that customers wait until March 10, 2008, before inquiring about

**EXHIBIT 4**

**USCIS & FBI JOINT PLAN TO ELIMINATE BACKLOG OF
FBI NAME CHECKS**

**April 2, 2008**

*Office of Communications*



U.S. Citizenship
and Immigration
Services

# News Release

April 2, 2008

## USCIS AND FBI RELEASE JOINT PLAN TO ELIMINATE BACKLOG
## OF FBI NAME CHECKS
*Partnership Establishes Series of Milestones To Complete Checks*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) and the Federal Bureau of Investigation (FBI) today announced a joint plan to eliminate the backlog of name checks pending with the FBI.

USCIS and the FBI established a series of milestones prioritizing work based on the age of the pending name check. The FBI has already eliminated all name check cases pending more than four years.

"This plan of action is the product of a strong partnership between USCIS and the FBI to eliminate the backlogs and to strengthen national security," said USCIS Director Emilio Gonzalez.

By increasing staff, expanding resources, and applying new business processes, the goal is to complete 98 percent of all name checks within 30 days. USCIS and the FBI intend to resolve the remaining two percent, which represent the most difficult name checks and require additional time to complete, within 90 days or less. The goal is to achieve and sustain these processing times by June 2009.

The joint plan will focus on resolving the oldest pending FBI name checks first. USCIS has also requested that the FBI prioritize resolution of approximately 29,800 pending name checks from naturalization applicants submitted to the FBI before May 2006 where the naturalization applicant was already interviewed.

The target milestones for processing name checks are:

| Completion Goal | Category |
|---|---|
| May 2008 | Process all name checks pending more than three years |
| July 2008 | Process all name checks pending more than two years |
| Nov. 2008 | Process all name checks pending more than one year |
| Feb. 2009 | Process all name checks pending more than 180 days |
| June 2009 | Process 98 percent of all name checks within 30 days and process the remaining two percent within 90 days. |

– USCIS –

# EXHIBIT 5

## USCIS SECONDARY INSPECTION REPORTS

### Rola Hamandi

```
+----------------- I N S P E C T I O N   R E M A R K S -----------------+
FRENCH CITZ-BORN BEIRUT LEBANON/TRAVLD 3 MOS AGO TO VISIT PARENTS IN LEB VP OF
NTL ID SYSTEMS AND PASSPORTS FOR AMERICAN BANKNOTE/OFFICE ADDRESS 1816 SW 4TH A
E,POMPANO,FL 33060-(954)9419210/MASTERS FROM VIRGINIA TECH IN MATERIAL SCIENCE
ND ENGNRG/TRVL TO MUSCAT OMAN FOR BUSINESS/RTRN IS  AUG 24TH/NO DEROG INFO



+----------------------------------------------------------------------+
```

all (b) (2)

+------------------ I N S P E C T I O N   R E M A R K S ----------------------+

                                                                    PAX TR
                                                          PAX WENT TO O

VELS ALOT BASED ON BUSINESS AMERICAN BANK NOTE COMPANY
AN AND RETURNED. PAX LAST VISIT IN LEBANON WAS IN 05/2006

+----------------------------------------------------------------------------+