**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROLA HAMANDI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-2153 (ESH) |
| | ) |
| MICHAEL CHERTOFF, Secretary, | ) |
| U.S. Department of Homeland Security, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Pursuant to the Mandamus Act and the Administrative Procedure Act, plaintiff Rola

Hamandi seeks to compel defendants, who are the heads of various United States government

agencies with responsibilities relating to citizenship and immigration, to adjudicate without

further delay her pending application for naturalization.  Defendants have moved to dismiss the

complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

For the reasons set forth herein, the Court grants the motion with respect to defendant Robert S.

Mueller III, Director of the Federal Bureau of Investigation ("FBI"), but it denies the motion as

to defendants Michael Chertoff, Secretary of the Department of Homeland Security ("DHS"),

and Emilio T. Gonzalez, Director of the United States Citizenship and Immigration Services

("USCIS").

## BACKGROUND

Plaintiff is a citizen and a national of both France and Lebanon.  (Pet. for Writ Mandamus

("Pet.") ¶¶ 6, 16.)  She has lived in the United States since 1990, and has been a legal permanent

resident since October 2, 2001.  (*Id.*)

Defendants are the Secretary of DHS, the Director of USCIS, and the Director of the FBI.

USCIS, which is part of DHS, has responsibility for adjudicating citizenship applications, and

the FBI performs criminal background checks, including the FBI "name check," with respect to

applicants for U.S. citizenship.  (*Id.* ¶ 14.)

Plaintiff filed an application for naturalization (form N-400) with USCIS on July 31,

2006.  (*Id.* ¶ 17.)  In May and July 2007, plaintiff contacted USCIS by telephone about the status

of her application, but was given no information.  (*Id.* ¶ 18.)  On August 16, 2007, upon traveling

in person to USCIS's Miami District Office, plaintiff was told that her application was delayed

because the required FBI name check had not yet been completed.  (*Id.*)  The Office followed up

with a letter dated September 15, 2007, in which it stated that "[a] check of our records

establishes that your case is not yet ready for decision, as the required investigation into your

background remains open."  (*Id.* Ex. 4.)  In addition, USCIS failed to schedule plaintiff for the

requisite interview and test of her language abilities and knowledge of U.S. history and culture.

(*Id.* ¶ 7.)  Accordingly, on November 29, 2007, plaintiff filed this action seeking to compel

defendants to process her naturalization application.

## ANALYSIS

### I.      STANDARD OF REVEIW

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1),

plaintiff bears the burden of establishing by a preponderance of the evidence that the court has

subject matter jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A

court must accept as true all factual allegations in the complaint, and give plaintiff the benefit of

all reasonable inferences from the facts alleged.  *Sparrow v. United Air Lines, Inc.*, 216 F.3d

1111, 1114 (D.C. Cir. 2000).  However, a court need not accept as true "a legal conclusion

couched as a factual allegation," nor inferences that are "unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  In considering the sufficiency of a plaintiff's allegations for this purpose, a court may consider materials outside the pleadings.  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## II.    JURISDICTION

Plaintiff contends that this Court has jurisdiction to compel defendants to adjudicate her application pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361.  (Pet. ¶ 2.)  She claims that defendants have a nondiscretionary duty to adjudicate her application within a reasonable time, and since they have failed to do so, the Court should compel them to act.[1]  Defendants, on the other hand, contend

---

[1] Plaintiff also raises other allegations and requests additional relief in her opposition to defendants' motion to dismiss.  Specifically, plaintiff contends that USCIS "expanded the FBI name check in November 2002" without promulgating a proposed rule or giving notice and an opportunity for public comment and requests that the Court order defendants to comply with the APA's notice and comment requirements.  (Opp'n at 8-9, 19.)  Plaintiff also alleges for the first time in her opposition that defendants are discriminating against her on the basis of race and religion in violation of 42 U.S.C. § 2000.  (*Id.* at 12.)  Such claims, having been raised for the first time in plaintiff's opposition, are not properly before the Court.  *See Sharp v. Rosa Mexicano*, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2000) ("[P]laintiff may not, through summary judgment briefs, raise the new claims . . . because plaintiff did not raise them in his complaint, and did not file an amended complaint."); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempts to broaden claims and thereby amend its complaint in opposition to defendant's motion for summary judgment).

Moreover, the Court will not further address plaintiff's assertion that defendants violated ethics rules by failing to notify her counsel prior to filing a request for extension of time and by failing to serve counsel with the motion once filed.  (*See* Opp'n at 2.)  The Court denied plaintiff's motion to strike and will not revisit that issue here, and as defendants point out, their motion to dismiss was properly filed and served through the Court's CM/ECF system.  *See* LCvR 5.4.

that Section 336(b) of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1447(b),

which permits an applicant for naturalization to bring an action in federal district court if USCIS

fails to act on the application within 120 days of having examined the applicant,[2] provides a

court with a specific and exclusive jurisdictional grant, and plaintiff may not circumvent the

limitations of the statute by means of the APA or a mandamus action.  Moreover, defendants

claim that relief under the APA and the Mandamus Act is unavailable because USCIS has no

clear nondiscretionary duty to complete the adjudication of plaintiff's application prior to the

receipt of her name check results and completion of her interview, and no statute or regulation

gives USCIS a nondiscretionary duty to request expedited background checks or imposes any

limitations on the FBI's discretion regarding the timetable for conducting name checks.

A.     **Jurisdiction Under the APA**

Pursuant to the APA, a person adversely affected by agency action is entitled to judicial

review.  5 U.S.C. § 702.   Agency action includes the failure to act.  *Id.* § 551(13).  Because the

---

Finally, the Court notes that plaintiff filed an unauthorized surreply, which is not properly before the Court.  *See* LCvR 7.  In addition, plaintiff's surreply adds nothing that would change the Court's conclusions.

[2] 8 U.S.C. § 1447(b) states:

> If there is a failure to make a determination [on the applicant's naturalization application] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

While courts are split over whether the reference in the statutory provision to an "examination" refers to the applicant's interview, *see, e.g.*, *Khelifa v. Chertoff*, 433 F. Supp. 2d 836, 841-42 (E.D. Mich. 2006), or the entire naturalization process, including all facets of the background investigation, *see, e.g., Danilov v. Aguirre*, 370 F. Supp. 2d 441 (E.D. Va. 2005), that issue is not relevant here, as plaintiff has not been interviewed.

APA requires agencies to conclude matters presented to them "within a reasonable time," *id.* §

555(b), a court may sometimes "compel agency action unlawfully withheld or unreasonably

delayed," *id.* § 706(1).  However, "a claim under § 706(1) can proceed only where a plaintiff

asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton*

*v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original).  Thus, a plaintiff

may invoke subject matter jurisdiction under the APA only if the defendant had a duty to

perform a ministerial or nondiscretionary act.  *See id.*  As the D.C. Circuit has recently

explained, "when an agency is compelled by law to act, but the manner of its action is left to the

agency's discretion, the 'court can compel the agency to act, [although it] has no power to

specify what th[at] action must be.'"  *Kaufman v. Mukasey*, No. 06-5259, 2008 U.S. App. LEXIS

9527, at *7 (D.C. Cir. May 2, 2008) (quoting *Norton*, 542 U.S. at 65) (alterations in original).

While the APA does not confer subject matter jurisdiction by itself, the APA in conjunction with

28 U.S.C. § 1331 (which gives federal district courts federal question jurisdiction) gives the

Court jurisdiction to compel unreasonably delayed agency action.  *See Califano v. Sanders*, 430

U.S. 99, 106-07 (1977).

### 1. The Court Has Jurisdiction Over Plaintiff's Claim Against USCIS Pursuant to the APA

As the agency responsible for adjudication of naturalization applications, USCIS has a

mandatory, nondiscretionary duty to fulfill this role.  Both the INA and USCIS regulations make

this duty clear.  Specifically, the statute and regulations require that after the filing of a

naturalization application, USCIS must conduct a background investigation of the applicant.  8

U.S.C. § 1446(a); 8 C.F.R. § 335.1.  The agency must also conduct an examination of the

applicant.  8 U.S.C. § 1446(b); 8 C.F.R. § 335.2(a).  The examiner "shall make a determination

as to whether the application should be granted or denied, with reasons therefor."  8 U.S.C. §

1446(d).  *See also* 8 C.F.R. § 316.14(b)(1) ("Subject to supervisory review, the employee of

[USCIS] who conducts the examination [on an application for naturalization] shall determine

whether to grant or deny the application, and shall provide reasons for the determination . . . .");

8 C.F.R. § 335.3(a) (USCIS "shall grant the application if the applicant has complied with all

requirements for naturalization . . .").[3]

Because USCIS is required to adjudicate naturalization applications, it must do so in a

reasonable amount of time.  That the INA does not specify a timeframe for action (at least not

prior to plaintiff's examination) is immaterial; the APA's requirement of action within a

reasonable time applies.  The D.C. Circuit's decision in *Mashpee Wampanoag Tribal Council,*

*Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003), is highly instructive.  In that case, the Court

upheld the district court's determination that it had jurisdiction pursuant to the APA over a tribal

council's suit to compel the Bureau of Indian Affairs ("BIA") to act on the council's petition for

recognition as an Indian tribe.  The council's petition had been placed in a queue, with priority

established on a first-come basis.  While recognizing that "[n]o statute or regulation specifies

how quickly the queue must move along - - in contrast to the timeframe for processing a petition

once it is under active consideration," the Court nevertheless found that the district court had

general federal question jurisdiction under 28 U.S.C. § 1331 to determine whether the BIA was

in violation of the APA's requirement that agencies must act within a reasonable time, and if

such a determination was made, it could issue an order compelling action pursuant to 5 U.S.C. §

706.  336 F.3d at 1097, 1100.  Similarly, in this case, while no statute or regulation specifies how

_____

[3] These statutory and regulatory provisions make reference to the Attorney General and
the "Service."  The Service is defined as the Immigration and Naturalization Service ("INS").  8
U.S.C. § 1101(a)(34).  Prior to 2002, however, the Attorney General delegated his authority
under the INA to the INS, 8 C.F.R. § 100.2, and in that year, Congress abolished the INS and
reassigned its duties with regard to the adjudication of naturalization applications to USCIS.  6
U.S.C. § 271(b).

quickly USCIS must move naturalization applications along, in contrast to the timeframe for

processing an application once the petitioner's examination has been completed, the Court

nonetheless has jurisdiction "to compel the agency to act."[4]  *Kaufman*, 2008 U.S. App. LEXIS

9527, at *7.  Moreover, that determinations regarding immigration and national security are at

issue does not necessarily preclude judicial review under the APA.  As the D.C. Circuit recently

noted:

> [A]lthough determinations regarding national security are matters that courts
> acknowledge are generally beyond their ken, *see, e.g.*, *INS v. Aguirre-Aguirre*,
> 526 U.S. 415, 424-25 (1999), a failure to make a determination can be reviewable
> under the APA . . . .  [W]e do not understand the government to suggest that a
> congressionally created right can be nullified by government inaction.

*Kaufman*, 2008 U.S. App. LEXIS 9527, at *15 (citation omitted).

In sum, "[e]ven though neither the statute nor regulations establish a definitive deadline

for scheduling an examination that does not mean that [US]CIS possesses 'unfettered discretion

to relegate aliens to a state of limbo, leaving them to languish there indefinitely.'"  *Hanbali v.*

---

[4] The Court rejects defendants' contention, supported by the district court's decision in
*Danilov v. Aguirre*, 370 F. Supp. 2d 441 (E.D. Va. 2005), that 28 U.S.C. § 1447(b) provides
plaintiff's exclusive remedy.  In support of this premise, defendants and the *Danilov* court relied
primarily on *United States v. Fausto*, 484 U.S. 439 (1988).  In that case, the Supreme Court
found that

> the comprehensive nature of the [Civil Service Reform Act], the
> attention that it gives throughout to the rights of nonpreference
> excepted service employees, and the fact that it does not include
> them in provisions for administrative and judicial review . . .
> combine to establish a congressional judgment that those
> employees should not be able to demand judicial review . . . .

484 U.S. at 448.  The statute here is unlike the Civil Service Reform Act, and therefore, the
Court is unwilling to presume that Congress specifically intended to foreclose judicial review
prior to a naturalization applicant's examination from the mere fact that it provided for such
review thereafter, especially given the fact that § 1447(b) was intended to speed review of such
applications.  *See Bustamante v. Chertoff*, 533 F. Supp. 2d 373, 378 (S.D.N.Y. 2008).

*Chertoff*, No. 3:07CV-50-H, 2007 U.S. Dist. LEXIS 65742, at *7 (W.D. Ky. Aug. 17, 2007)

(quoting *Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 399 (E.D. Pa. 2007)).[5]

### 2. The Court Does Not Have Jurisdiction Over Plaintiff's Claim Against the FBI Pursuant to the APA

In contrast to USCIS's duty under the INA and associated regulations to adjudicate

naturalization applications, the FBI has no adjudicative responsibilities with respect to such

applications.  Furthermore, "no statute or regulation cited . . . by plaintiff expressly creates a

mandatory duty owed by the FBI to individual naturalization applicants to process background

and name checks and forward the results of these checks to the USCIS." *Costa v. Chertoff*, No.

07-2467, 2007 U.S. Dist. LEXIS 92666, at *13 (E.D. Pa. Dec. 17, 2007).  Accordingly, the Court

lacks jurisdiction over plaintiff's APA claim against the FBI.[6]

---

[5] While many district courts have held that USCIS has a nondiscretionary duty under the APA or the Mandamus Act to adjudicate naturalization applications within a reasonable time, this view is far from unanimous. *See, e.g.*, *Sidhu v. Chertoff*, No. 1:07-CV-1188 AWI SMS, 2008 U.S. Dist. LEXIS 13804, at *19 (E.D. Ca. Feb. 25, 2008) (finding that USCIS has mandatory duty to adjudicate naturalization applications within a reasonable time); *Moretazpour v. Chertoff*, No. C 07-4264 BZ, 2007 U.S. Dist. LEXIS 92047, *8-9 (N.D. Ca. Dec. 5, 2007) (same); *Assadzadeh v. Mueller*, No. 07-2676, 2007 U.S. Dist. LEXIS 80915, at *13-14 (E.D. Pa. Oct. 31, 2007) (same).  *But see, e.g.*, *Ibrahim v. Chertoff,* 529 F. Supp. 2d 611 (E.D.N.C. Dec. 28, 2007) (finding no jurisdiction under APA or Mandamus Act because no right to have naturalization application adjudicated or name check completed within a specific time); *Omar v. Mueller,* 501 F. Supp. 2d 636, 639-40 (D.N.J. 2007) (same); *Badier v. Gonzales*, 475 F. Supp. 2d 1294, 1297-99 (N.D. Ga. 2006) (finding no jurisdiction under APA or Mandamus and Venue Act because scheduling of applicant's examination within agency's discretion).  The Court finds the reasoning of those courts that have found jurisdiction to be the more persuasive for the reasons stated herein.

[6] Other courts have likewise found that the FBI does not owe a duty to applicants for naturalization to process their background checks. *See, e.g., Sinha v. Upchurch,* No. 1:07CV2274, 2007 U.S. Dist. LEXIS 90286, at *14 (N.D. Ohio Dec. 7, 2007) (finding "no congressional mandate requiring the FBI Defendants to process plaintiff's background check"); *Shalabi v. Gonzales*, No. 4:06CV866 RWS, 2006 U.S. Dist. LEXIS 77096, at *15 (E.D. Mo. Oct. 23, 2006) (finding no clear nondiscretionary duty where no statute or regulation imposes a deadline for the FBI to complete a criminal background check). *But see Zagrebelny v. Frazier*, No. 07-1682 (PAM/JSM), 2008 U.S. Dist. LEXIS 16641 (D. Minn. Mar. 4, 2008) (FBI has a

The courts that have asserted jurisdiction over the FBI to compel the agency to process

background checks have principally relied on the rationale set forth in *Kaplan v. Chertoff*, 481 F.

Supp. 2d 370 (E.D. Pa. 2007).  While the court in *Kaplan* acknowledged that "there appears to be

no single statute that, standing alone, expressly imposes a mandatory duty on the FBI to perform

background checks," it nevertheless found that Congress had imposed such a duty on the FBI

based on "a number of Congressional enactments."  *Id.* at 400.  Specifically, the court noted that

(1) pursuant to the 1998 Department of Justice Appropriations Act, Pub. L. No. 105-119, Title I,

111 Stat. 2440, 2448 (1997), Congress prohibits USCIS from using any funds to complete

adjudication of naturalization applications until it has received confirmation from the FBI that

full criminal background checks have been completed;[7] (2) in the 1991 Department of Justice

Appropriations Act, Pub. L. No. 101-515, 104 Stat. 2101, 2112 (1990), Congress authorized the

FBI to establish and collect fees to cover name check costs;[8] and (3) pursuant to 8 C.F.R. §§

316.4 and 334.2, USCIS requires applicants for naturalization to submit an application fee, "a

portion of which the [US]CIS pays over to the FBI for fingerprint and name checks."  481 F.

Supp. 2d at 400-01.  Based on these factors, the court concluded that "Congress has, by

---

mandatory duty to complete its background check within a reasonable time even though that duty
is not expressly stated in a statute) and cases cited therein.

[7] The Act specifically states:

> [D]uring fiscal year 1998 and each fiscal year thereafter, none of
> the funds appropriated or otherwise made available to the
> Immigration and Naturalization Service shall be used to complete
> adjudication of an application for naturalization unless the
> Immigration and Naturalization Service has received confirmation
> from the Federal Bureau of Investigation that a full criminal
> background check has been completed . . . .

[8] That provision states that the FBI "may establish and collect fees to process
identification records and name checks."

implication, imposed on the FBI a mandatory duty to complete the background checks." *Id.* at 401.

This Court finds the *Kaplan* court's analysis unpersuasive and agrees with the reasoning of other courts that have refused to infer a mandatory duty owed by the FBI to naturalization applicants. *See supra* note 6. First, the 1998 Department of Justice Appropriations Act is addressed to USCIS, not the FBI and "establishes conditions that USCIS must satisfy to access appropriated funds." *Antonishin v. Keisler*, No. 06CV2518, 2007 U.S. Dist. LEXIS 70063, at *22 (N.D. Ill. Sept. 20, 2007). Thus, "it is at best unclear whether Congress intended to impose any mandatory duty on the FBI." *Id.* Moreover, it is difficult to see how the fact that Congress permits the FBI to recover the costs of performing name checks creates a duty by the FBI to naturalization applicants. Finally, USCIS regulations requiring naturalization applicants to pay an application fee do not mention the FBI and do not, on their face, require remission of any fee to the FBI. The fact that USCIS remits a portion of the application fees it receives to the FBI would at most indicate an obligation by the FBI to USCIS, but it would not establish a duty to any individual applicant. *See Costa v. Chertoff*, No. 07-2467, 2007 U.S. Dist. LEXIS 92666, at *16-17 (E.D. Pa. Dec. 17, 2007) (noting that 1991 Appropriations Act is "permissive in nature, allowing the FBI to collect fees for processing background checks, but in no way imposing a clear, mandatory duty on the FBI" and stating with respect to 8 C.F.R. § 334.2 that since the regulation does not mention the FBI, the court "will not infer a mandatory duty on the part of the FBI based upon a regulation concerning a different agency" (internal quotation and citation omitted)). Importantly, none of these provisions actually mandates that the FBI perform a background check nor does USCIS possess the ability to do so.

For these reasons, the Court concludes that it has no jurisdiction over the FBI defendant

under the APA.

**B.    Jurisdiction Under the Mandamus Act**

The extraordinary writ of mandamus is available "to compel an officer or employee of

the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. §

1361.  The writ of mandamus is "a drastic and extraordinary remedy reserved for really

extraordinary causes."  *Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004) (internal

quotations and citation omitted); *accord Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34

(1980).  Mandamus relief is available only if "(1) the plaintiff has a clear right to relief; (2) the

defendant has a clear duty to act; and (3) there is no other adequate remedy available to the

plaintiff."  *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (citations

omitted).  The duty to be compelled must be nondiscretionary.  *Pittston Coal Group v. Sebben*,

488 U.S. 105, 121 (1988).

**1.   The Court Need Not Decide Whether it Has Jurisdiction Over USCIS Pursuant to the Mandamus Act**

Because the Court finds that it has jurisdiction over USCIS pursuant to 28 U.S.C. § 1331

and the APA, it need not reach the question of whether mandamus is available to compel action

by the agency on plaintiff's application.  *See Action Alliance of Senior Citizens v. Leavitt*, 483

F.3d 852, 858 (D.C. Cir. 2007) (noting standard rule that existence of an alternative remedy

precludes mandamus); *Valona v. U.S. Parole Comm'n*, 165 F.3d 508, 510 (7th Cir. 1998) ("APA

. . . authorizes district courts to 'compel agency action unlawfully withheld or unreasonably

delayed' without the need of a separate action seeking mandamus").

> **2.**     **The Court Lacks Jurisdiction Over the FBI Pursuant to the Mandamus Act**

For the same reasons that the Court lacks jurisdiction over the FBI pursuant to the APA, it also lacks mandamus jurisdiction.  No law obligates the FBI to perform background checks, and the FBI does not owe plaintiff a nondiscretionary duty to process her background check.

> **C.**     **Whether USCIS has Engaged in Unreasonable Delay**

While the court has jurisdiction over USCIS, the determination of whether an agency's delay is unreasonable is a fact specific inquiry that is premature at this stage of the proceedings. "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee*, 336 F.3d at 1100 (discussing factors set forth in *Telecomms. Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), for determining whether agency has engaged in unreasonable delay).

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss [# 12] will be granted with respect to defendant Robert S. Mueller III and denied in all other respects.  A status conference is hereby set for June 2, 2008, at 9:30 a.m.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: May 6, 2008